563 F.2d 831
 Leona S. BONNET, Plaintiff-Appellant,
v.
TRUSTEES OF SCHOOLS OF TOWNSHIP 41 NORTH, RANGE 12 EAST OF
THE THIRD PRINCIPAL MERIDIAN, COOK COUNTY, ILLINOIS, and
Community Consolidated School District Number 64, Cook
County, Illinois and Sidney R. Olsen, Registrar of Titles,
Cook County, Illinois, Defendants-Appellees.
 No. 75-1923.
 United States Court of Appeals,
Seventh Circuit.
 Argued Feb. 18, 1976.
Decided Sept. 26, 1977.
 
 Arthur M. Scheller, Jr., Michael Schiessle, Park Ridge, Ill., for plaintiff-appellant.
 Robert E. Wiss, Allyn J. Franke, Chicago, Ill., for defendants-appellees.
 Before FAIRCHILD, Chief Judge, and SWYGERT and BAUER, Circuit Judges.
 FAIRCHILD, Chief Judge.
 
 
 1
 Plaintiff Leona S. Bonnet, represented by her counsel, Arthur M. Scheller, Jr., appeals from a judgment dismissing the action.[1] Ms. Bonnet is a resident of Florida and defendants, being Illinois school trustees and a Registrar of Titles, are presumably residents of Illinois. Plaintiff sought possession of, and a declaration that she has title to, certain Illinois real estate.
 
 
 2
 Plaintiff claimed that the district court had jurisdiction based on diversity. The district court concluded that Mr. Scheller, plaintiff's counsel, is an indispensable party by reason of a contract between him and plaintiff, and that since he cannot be joined as a plaintiff without destroying diversity, the action must be dismissed.
 
 
 3
 It appears from the complaint that in 1951 the school trustees took the land in question by eminent domain, but have since ceased to use it for school purposes. Ms. Bonnet has inherited the interest of the original condemnee, if any interest remained. The controversy is whether the condemnation proceeding transferred fee simple to the trustees, or whether their title was determinable upon cessation of use for school purposes.
 
 
 4
 On the face of the complaint, plaintiff appears to be the appropriate sole plaintiff, and there appears to be jurisdiction based on diversity. The problem arises because of the contract between plaintiff and Mr. Scheller, made a part of the record on defendant's motion.
 
 
 5
 The contract (originally made in 1965) recites that Scheller desires to purchase plaintiff's interest in the real estate, and provides that Scheller has the right to attempt to perfect plaintiff's title; that he agrees to commence litigation to perfect it, bringing it in plaintiff's name on such theories as he deems in his best interest, paying all costs and expenses, and bringing such appeals as he sees fit. As long as the agreement is in force (now extended to February 8, 1979) Scheller has the right to purchase for a price, fixed by a 1975 amendment at $10,500. If, however, plaintiff's title is perfected by litigation, Scheller will be bound to make such purchase.
 
 
 6
 * The district court concluded that the contract worked an equitable conversion, so that Scheller has a real property interest, while vendor-plaintiff's interest has become personalty. Accordingly, it held Scheller an indispensable party and since joinder of Scheller would destroy diversity, it dismissed the action.
 
 
 7
 Since Scheller presently has only an option, and his obligation to buy is contingent upon the outcome of litigation, Cf. Shay v. Penrose, 25 Ill.2d 447, 450, 185 N.E.2d 218 (1962), the court's conclusion that there was an equitable conversion is debatable. The action is denominated ejectment, although it appears also to seek declaratory relief. Under Illinois law only the person who claims legal title may bring an action for ejectment. Zimmerman v. Kennedy, 405 Ill. 306, 309-10, 90 N.E.2d 756 (1950). Aside from those considerations, however, we do not agree that Rule 19(b), Fed.R.Civ.P., requires dismissal. Rule 19(a) is inapplicable because joinder would deprive the court of jurisdiction.
 
 
 8
 The question under Rule 19(b) is whether Scheller is indispensable and whether "in equity and good conscience the action should proceed among the parties before (the court)." In making this judgment the court is obliged to weigh several factors: (1) the prejudice to the nonjoined person and the parties . . . (3) the adequacy of the judgment in the absence of this person; and (4) the availability for the plaintiff of an adequate remedy if the action is dismissed for non-joinder. If, after evaluating these factors, the court decides that the action should not proceed in the absence of the person, the action must be dismissed. See Macklin v. Butler, 553 F.2d 525, 531 (7th Cir.).
 
 
 9
 Under the circumstances, neither Mr. Scheller nor any party is subject to any prejudice by his not being a party. He is in a position to protect his interests as fully as the law and facts permit. He is not only in the position of counsel to plaintiff, and in control of the action in that sense. He has, moreover, a contract right to continue to control the action. The outcome depends on the legal effect of a 1951 condemnation proceeding, and establishing the decision of defendants to cease the use of the property for school purposes. There does not appear to be any advantage to defendants in having Mr. Scheller joined as plaintiff in establishing their defenses. Defendants have suggested no way in which they would be prejudiced by his absence as a party.
 
 
 10
 A judgment will be adequate in Scheller's absence as a party. If favorable to defendants, they will face no substantial risk of a later action by Scheller. He would be bound by a judgment adverse to plaintiff either because he was in privity with plaintiff as his predecessor in title, e. g., Archer v. United States, 268 F.2d 687, 690 (10th Cir. 1959) and Faribault Canning Co. v. Northwestern Nat'l Cas. Co., 298 F.2d 58, 60 (7th Cir. 1961), or because he was a participating non-party, e. g., Rumford Chemical Works v. Hygienic Chemical Co., 215 U.S. 156, 158, 30 S.Ct. 45, 54 L.Ed. 137 (1909) and Litchfield v. Goodnow, 123 U.S. 549, 551, 8 S.Ct. 210, 31 L.Ed. 199 (1887).
 
 
 11
 Although, as observed by the district court, Mr. Scheller has similar actions pending in an Illinois court against defendants, presumably involving parcels as to which he has taken title, we do not view the availability of an alternative remedy, standing alone, as a sufficient reason for deciding that the action should not proceed among the parties before the court.II
 
 
 12
 Defendants contend that even if Rule 19(b) does not require dismissal, Mr. Scheller collusively manufactured diversity jurisdiction for this action, so that jurisdiction fails under 28 U.S.C. § 1359.[2] They also claim that the plaintiff is not the real party in interest and, therefore, the action cannot be brought in her name. Rule 17, Fed.R.Civ.P.[3]
 
 
 13
 Defendants apparently contend that the contractual arrangement under which the legal title was left in Ms. Bonnet was a collusive device to present a Florida resident as plaintiff. The existence of any interest in the real estate, adverse to defendants, is totally dependent upon the outcome of this action. Under these circumstances, there is nothing to suggest a collusive purpose in an arrangement where Scheller is not obligated to buy unless the action turns out successfully, and the "title" which may turn out not to exist, is left where it already was, in Ms. Bonnet's name. We are also told that the contract was originally executed while Ms. Bonnet was still an Illinois resident, and there is no claim that her removal to Florida was collusive.
 
 
 14
 Cases relied on by defendants do not support their position. Each deals with an affirmative act by an owner of a cause of action in order to present a different person as plaintiff. In Cashman v. Amador and Sacramento Canal Co., 118 U.S. 58, 6 S.Ct. 926, 30 L.Ed. 72 (1886), the Court held that jurisdiction was improperly invoked because Sacramento County had contracted with Mr. Cashman to bring a suit on its behalf; the county could not bring the suit in federal court in its own name. 118 U.S. at 61, 6 S.Ct. 926. The county had sought out Cashman for the purpose of obtaining federal jurisdiction, and the Court decided that this manipulation was proscribed by the statutory predecessor to § 1359.
 
 
 15
 In Kramer v. Caribbean Mills, Inc., 394 U.S. 823, 89 S.Ct. 1487, 23 L.Ed.2d 9 (1969) a corporation interested in collecting a debt assigned its claim to an attorney, Kramer, for the sole purpose of securing a federal forum. 394 U.S. at 828, 89 S.Ct. 1487. The Court found lack of diversity jurisdiction because it had been manufactured by a collusive assignment. Id. at 828, 89 S.Ct. 1487.
 
 
 16
 We also conclude that Ms. Bonnet meets the real party in interest standard of Rule 17. See, generally, 3A Moore's Federal Practice, P 17.07 (2d ed. 1948). She has at stake the $10,500 she will be entitled to receive from Scheller if the outcome is favorable. We surmise that the property is worth more and that if the outcome is favorable, Mr. Scheller's right to buy it for $10,500 will have value. Nevertheless Ms. Bonnet has a very substantial interest in the claim.
 
 III
 
 17
 Defendants finally argue that the district court should abstain because actions involving the same legal question are pending in the Circuit Court of Cook County.
 
 
 18
 They have, however, failed to demonstrate how any of the traditional theories of abstention apply to this litigation. See, Colorado River Water Conservation District v. United States, 424 U.S. 800, 813, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). This case presents neither a federal question which might be mooted by a state court determination of state law, Railroad Comm'n of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), or a difficult question of state law bearing on an issue of public policy, Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959), or the request to restrain criminal or civil proceedings in favor of the exercise of federal jurisdiction, Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and Huffman v. Pursue, Ltd., 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975).
 
 IV
 
 19
 It further appears from a motion, recently filed by defendants, that the Circuit Court of Cook County has decided the two actions above referred to. The decision went against Mr. Scheller, the plaintiff in those actions. These actions were brought against the same defendants and involve other parcels of property acquired by defendants in 1951. In these instances, Scheller has already acquired whatever interests were retained by the former owners, and he is the plaintiff. Defendants argue that the issues in those cases on the merits are the same as in this. They argue that this appeal should be dismissed because the circuit court decisions are res judicata and the law of the case. Defendants' motion is contested.
 
 
 20
 There may be circumstances where a controversy has been so clearly resolved elsewhere on its merits that an appeal from a dismissal on jurisdictional or other preliminary grounds becomes moot. Here, however, we think the proper course is to vacate the judgment of dismissal and remand for further proceedings. Defendants will be free to present their merits defenses, including any effect of the decision of the circuit court on the merits of the action.
 
 
 21
 Defendant's motion to dismiss is denied and the judgment appealed from is vacated and the cause remanded for further proceedings. Each party is to bear his own costs on appeal.
 
 
 22
 BAUER, Circuit Judge, dissenting.
 
 
 23
 I dissent. The trial court found, and the facts would seem to require a finding, that the doctrine of equitable conversion had vested in the contract purchaser the right to bring a suit for declaratory judgment and other relief. Moreover, the equitable conversion doctrine made the contract purchaser an indispensable party and required the ruling of the court below dismissing the suit.
 
 
 24
 Obviously, the jumping-off place between the opinion of the trial court and the opinion of the majority of this panel lies in the finding of this Court that
 
 
 25
 "Since Scheller presently has only an option, and his obligation to buy is contingent upon the outcome of litigation, . . . the court's conclusion that there was an equitable conversion is debatable."
 
 
 26
 The fact is, however, that Scheller does not have an option; he has a sales contract. As with most contracts for the sale of real estate, this one requires that the seller have "good" title before the buyer is required to pay. This contract is different only in that the buyer has the right to attempt to perfect the seller's title and that if title is not perfected within six months, then it has the obligation to commence, or cause to be commenced, litigation to effect the perfection of title.[1]
 
 
 27
 A contract of sale which provides that the buyer must pay the purchase price upon the showing of good title in the seller is not an option; if it were, nearly every contract for the sale of land in Illinois would be only an "option." The sole difference between the duties of the respective parties to this contract and more standard contracts of sale is the exchange of responsibility for the perfection of such title; that is, the buyer undertakes to straighten out any difficulties in title rather than the seller, who is the normal party required to demonstrate good title.
 
 
 28
 Once title has been established by whomsoever or howsoever, the buyer Scheller had an absolute duty to pay the purchase price and the seller had an obligation to deliver a deed. On that basis, the doctrine of equitable conversion was properly ruled on in the trial court. Shay v. Penrose, 25 Ill.2d 447, 185 N.E.2d 218 (1962).
 
 
 29
 The logical extension of this finding (that the doctrine of equitable conversion was applicable to these facts) is that Scheller became an indispensable party to the law suit, and the suit therefore lacks diversity. The nominal plaintiff has no interest in either the real estate or the law suit; her interest lies only in the contract of sale. If title is perfected, with or without litigation, she is entitled to payment.[2] Obviously, if she has no title the whole problem is moot.
 
 
 30
 I would affirm.
 
 
 
 [1]
 We construe Judge McLaren's "It is so Ordered," appearing at the end of his Memorandum Opinion and Order, as an order dismissing the action, and a judgment, and not as merely an order granting a motion to dismiss. If there were no final judgment, we would have no jurisdiction
 
 
 [2]
 Section 1359 provides that "(a) district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court."
 
 
 [3]
 Rule 17(a) provides in pertinent part that "(e)very action shall be prosecuted in the name of the real party in interest."
 
 
 [1]
 The Agreement reads in part as follows:
 "WHEREAS, Arthur M. Scheller, Jr., hereinafter referred to as Buyer is desirous of purchasing the interest of Leona S. Bonnet, Arthur Bonnet and Mary J. Atzel, hereinafter referred to as Sellers, in the hereinafter described real estate; THEREFORE, the parties for and upon the considerations hereinafter set forth, hereby agree as follows:
 
 
 [1]
 That buyer is to have the right to attempt to perfect seller's title to the real estate hereinafter described either in fee simple or in fee simple subject to a usage for school purposes. Seller's claim to the property arises from the fact that Leona S. Bonnet and Mary J. Atzel are the only heirs or devisees of Antoinette Rilling, who died, and Antoinette Rilling is allegedly the devisee of Lydia R. Kerr who was the registered owner of the said real estate (the said real estate is now registered in the name of others)
 
 
 [2]
 That if title is not perfected as aforesaid within six months after the date of this agreement the buyer agrees to commence litigation, or cause litigation to be commenced, within six months after the date of this agreement to perfect seller's title as aforesaid (either in fee simple or in fee simple subject to a usage for school purposes) to the real estate hereinafter described
 
 
 [3]
 That the said litigation may be brought upon such theories and in such manner as buyer deems to be in his best interest
 
 
 [4]
 That buyer is to pay all costs and expenses of such litigation including the cost and expenses of any and all appeals in connection with such litigation
 
 
 [5]
 That the said litigation may be brought in seller's name as plaintiff."
 
 
 [2]
 The Agreement further reads in part as follows:
 "9. Buyer agrees, that should buyer at any time hereafter by the litigation he is bringing or otherwise perfect fee simple title to the real estate in question to the sellers or any of them, (regardless or not whether such fee simple title is subject to usage of the said real estate for school purposes) buyer will be thereupon bound to purchase the said real estate from the sellers for the consideration as set forth in or determined by Paragraph No. 8 above. The conveyance in this event shall also be made by Illinois Statutory Quit Claim Deed. If the fee simple title as aforesaid is perfected by litigation, thereby binding buyer to purchase upon the expiration of the time to appeal by adverse parties from such judgment, order or decree declaring such fee simple title as aforesaid in the sellers or any of them, and in the event that any adverse party or parties appeal any such judgment, order or decree buyer shall only be bound to purchase when such judgment, order or decree appealed from is sustained."