**PASCO INTERNATIONAL (LONDON) LTD., Plaintiff-Appellant,**

v.

**STENOGRAPH CORPORATION, Energy Absorption Systems and Data General Corporation, Defendants-Appellees.**

No. 80–1061.

United States Court of Appeals, Seventh Circuit.

Argued May 6, 1980.

Decided Dec. 23, 1980.

William B. Lawless, New York City, for plaintiff-appellant.

Paul G. Simon, Chicago, Ill., for defendants-appellees.

Before PELL, Circuit Judge, NICHOLS, Judge,* and CUDAHY, Circuit Judge.

CUDAHY, Circuit Judge.

Appellant Pasco International (London) Limited ("Pasco") appeals from the dismissal of its complaint for damages and injunctive relief against Stenograph Corporation ("Stenograph"), Data General Corporation, and Energy Absorption Systems. The district court, applying Rule 19 of the Federal Rules of Civil Procedure, dismissed the complaint because of Pasco's failure to sue a purported indispensable party, Alan Croxford.[1] We find that Croxford is not an indispensable party to this action as that term is used in Rule 19 and, accordingly, we reverse.

According to the complaint,[2] Pasco, through its chief engineer in Nigeria, Alan Croxford, began negotiating in late 1978 to obtain a contract to sell a computerized stenographic system to the Nigerian government and its nineteen constituent states. On March 19, 1979, Pasco entered into an exclusive agency agreement with defendant Stenograph. The agreement provided that Stenograph would provide the machines for the stenographic system and supervise the training of the Nigerian personnel.[3] However, before the oral agreement between Pasco and the Nigerian officials was put in final written form, Stenograph and Croxford conspired to obtain the Nigerian contracts for Stenograph. Pursuant to their agreement, Croxford ceased to represent Pasco's interests, began falsely disparaging the financial condition of Pasco to the Nigerians[4] and became Stenograph's sales agent.[5] This activity was designed to induce the Nigerian government to bypass Pasco and deal directly with Stenograph. Two Nigerian states have already entered into contracts with Croxford in his capacity as an agent for Stenograph.

The complaint attempts to allege three separate causes of action. One consists of a breach of contract action against Stenograph on the exclusive agency agreement between Pasco and Stenograph. The others are tort claims based upon Stenograph's alleged interference with the contractual relations between Pasco and the Nigerians and upon the alleged interference with the prospective economic advantage Pasco possessed in its expected future dealings with the Nigerians.

* The Honorable Philip Nichols, Jr., Judge of the United States Court of Claims, is sitting by designation.

1. Before the present action was filed, Pasco had attempted to sue the three present defendants and Croxford in federal court. This earlier suit was dismissed for lack of diversity, defendant Croxford and plaintiff Pasco both being aliens for diversity purposes. The present action was subsequently filed without naming Croxford as a defendant. Jurisdiction in the present suit is based upon the diversity of citizenship of the parties.

2. For the purposes of the motion to dismiss, we must accept the allegations of the complaint as true. *See Hospital Building Co. v. Trustees of Rex Hospital*, 425 U.S. 738, 740, 96 S.Ct. 1848, 1850, 48 L.Ed.2d 338 (1976).

3. Data General was to be the alleged supplier of the stenographic machines. The remaining defendant, Energy Absorption Systems, merely owns a controlling stock interest in Stenograph.

4. The other defendants, Data General and Energy Absorption Systems, also allegedly conspired with Stenograph to interfere with the budding agreement between Pasco and the Nigerian government. The complaint does not appear to allege that Data General and Energy Absorption were involved in the conspiracy to make disparaging statements.

5. Allegedly, these activities were in breach of Croxford's employment contract with Pasco. Pasco subsequently discharged Croxford.

Plaintiff seeks to enjoin Stenograph and its agents from entering into contracts for stenographic services with the Nigerian Government and the constituent states of Nigeria. The plaintiff also seeks to enjoin the defendants from making any future false or injurious statements to the Nigerian officials. For monetary relief, the complaint seeks damages from Stenograph for its breach of the Pasco-Stenograph sales agency agreement. Pasco further prays for an accounting and restitution of the profits from the contracts already executed with the two states of Nigeria as well as for damages if Pasco fails to conclude its proposed contract with the Nigerian government.

## I. THE ISSUE

The district court's dismissal of Pasco's complaint reflects the conclusion that Croxford is an indispensable party to the action within the framework established by Rule 19 of the Federal Rules of Civil Procedure. The subsections of Rule 19 set out a two-step analysis of compulsory joinder problems.

■ Rule 19(a) lists the criteria for determining whether an absent party should be joined if feasible. When the joinder of the absent party would destroy diversity jurisdiction, however, Rule 19(a) is inapplicable. *Bio-Analytical Services, Inc. v. Edgewater Hospital, Inc.*, 565 F.2d 450, 452 (7th Cir. 1977), *cert. denied*, 439 U.S. 820, 99 S.Ct. 84, 58 L.Ed.2d 111 (1978).

■ If the plaintiff cannot join an absent person who should be joined if feasible under Rule 19(a),[6] the court must then determine under Rule 19(b) whether, in equity and good conscience, the action should proceed among the parties before it or should be dismissed because the absent person is indispensable. Rule 19(b) sets out four factors to guide the court's judgment:

first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

A careful application of these factors compels the conclusion that Croxford is not an indispensable party and that the district court erred in dismissing Pasco's complaint.

## II. THE FOUR FACTORS OF RULE 19(b)

■ A critical consideration under Rule 19(b) is the availability or unavailability of an alternative forum.[7] If the plaintiff's complaint is dismissed and there is no other court having jurisdiction over the parties as well as over the absent person, the plaintiff's interest in having the federal forum would strongly influence a court to find that the absent person was not indispensable. Here, however, there is an alternative forum because, on the face of the plaintiff's complaint, there is jurisdiction in the Illinois state courts over both the present defendants[8] and Croxford. The complaint alleges that Croxford is "doing business in Illinois," a potential basis for jurisdiction over Croxford in any Illinois action. *See* Ill.Rev.Stat. ch. 110, § 16 (1979). An affidavit filed by an officer of Pasco also states, upon information and belief, that Croxford has committed certain tortious acts within Illinois to further the

---

6. Appellants do not argue that Croxford is not a person to be joined if feasible under Rule 19(a). Accordingly, we assume, without deciding, that Croxford is such an absent person under Rule 19(a).

7. For convenience, we are treating the factors in a different order from that appearing in Rule 19(b).

8. Jurisdiction over Stenograph and the other present defendants would be based on the same activities in Illinois that supported jurisdiction in the instant case.

conspiratorial aims of the defendants. *See* Ill.Rev.Stat. ch. 110, § 17 (1979). It seems clear from these allegations (although an Illinois state court would not be bound by our analysis) that Croxford is subject to the jurisdiction of the Illinois courts.

While the availability of the alternative Illinois forum renders a Rule 19(b) dismissal less onerous, "we do not view the availability of an alternative remedy, standing alone, as a sufficient reason for deciding that the action should not proceed among the parties before the court." *Bio-Analytical Services, Inc. v. Edgewater Hospital, Inc.*, 565 F.2d 450, 453 (7th Cir. 1977), *cert. denied*, 439 U.S. 820, 99 S.Ct. 84, 58 L.Ed.2d 111 (1978) (citing *Bonnet v. Trustees of Schools of Township 41 North*, 563 F.2d 831, 833 (7th Cir. 1977)).[9] Where the plaintiff can otherwise maintain a diversity action in the federal courts, the plaintiff has an interest in the forum granted by federal law and chosen by him. To outweigh the plaintiff's choice some additional interest of the absent person, the other parties or the judicial system must be found.

Appellees have stressed the first factor recited in Rule 19(b), the prejudice to the absent person or to those already parties, to supply the additional interest to offset the plaintiff's choice of this federal forum. There are several alleged sources of prejudice, but we think them insufficiently substantial to make Croxford an indispensable party under Rule 19(b).[10]

Considering the absent party first, the possibility of injunctive relief in this suit does not result in any impermissible prejudice to Croxford. Any injunction against Stenograph would also bind Croxford to the extent of his agency[11] under Rule 65(d) of the Federal Rules of Civil Procedure:

> Every order granting an injunction ... is binding only upon the parties to the action, their officers, *agents, servants, employees*, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

Fed.R.Civ.P. 65(d) (emphasis supplied). As an agent, Croxford would be bound by any injunction against his principal while acting in that capacity. *Le Tourneau Co. of Georgia v. NLRB*, 150 F.2d 1012 (5th Cir.), *rev'd on other grounds*, 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372 (1945). This binding effect would undeniably affect Croxford's activities in Nigeria on behalf of Stenograph, but Rule 65 obviously contemplates that agents need not be parties to suits for injunctive relief against their principals. A harmonious reading of Rule 65 and Rule 19(b) therefore contemplates that this sort of impact is not a source of prejudice under the tests of Rule 19(b).

The possibility of monetary relief in this action does nothing to change our conclusion. It is difficult to perceive how

---

**9.** The availability of an alternative forum is primarily of negative significance under Rule 19. The absence of an alternative forum would weigh heavily, if not conclusively against dismissal while the existence of another forum would not have as significant an impact in favor of dismissal.

**10.** In certain areas the complaint focuses on Croxford as an agent of Stenograph. Other portions of the complaint allege that Croxford is a coconspirator. We treat the relationship as that of principal and agent for the purposes of this appeal because that is how the court below and the parties have characterized it. In any event, we would have no difficulty finding that Croxford was not indispensable to this action if we perceived him as a coconspirator. Prior to the 1966 amendments to Rule 19, coconspirators were not indispensable parties,

*Georgia v. Pennsylvania R. R.*, 324 U.S. 439, 463, 65 S.Ct. 716, 728, 89 L.Ed. 1051 (1945), and the 1966 amendments did not alter this established principle. 3A Moore's Federal Practice ⸀ 19.11, at 19–235 (2d ed. 1979). *See, e. g., Herpich v. Wallace*, 430 F.2d 792, 817 (5th Cir. 1970). It is for this reason that our discussion of the prejudice to the defendants focuses on Stenograph. Croxford's relationship with Data General or Energy Absorption could only be characterized as that of a coconspirator and he is thus not, vis-a-vis those two defendants, an indispensable party.

**11.** If, alternatively, Croxford is viewed as a coconspirator, he would also be bound under Rule 65 upon notice of any injunction as a "person in active concert" with the defendants.

Croxford would be prejudiced by an unfavorable judgment[12] for money damages against Stenograph. Croxford would not be liable for any of those damages and could assert any of his defenses in any indemnity or contribution action brought against him by Stenograph.

█ Stenograph asserts that Croxford will be prejudiced by the impact of the suit on Croxford's business reputation in Nigeria. Any agent will suffer some adverse practical consequences when his principal is held vicariously liable on account of the agent's conduct, but this is not a sufficient interest for finding the agent indispensable under Rule 19.[13] *See Wylain, Inc. v. Kidde Consumer Durables Corp.*, 74 F.R.D. 434, 436 (D.Del.1977). Any adverse impact on an agent of a money judgment against his principal would certainly be less intrusive than the impact of the agent's being bound by an injunction against the principal. But, as we have seen, the possibility of injunctive relief against the principal does not result in any prejudice to the agent which is cognizable under Rule 19(b). Hence, we similarly find no cognizable prejudice with respect to any claim for monetary relief.

The cases generally support this conclusion. For example, in *Willis v. Semmes, Bowen & Semmes*, 441 F.Supp. 1235, 1245–46 (E.D.Va.1977), the plaintiff sought, *inter alia*, to hold a law firm vicariously liable for the acts of its agent. The court ruled, however, that the agent was not an indispensable party in a tort action against the principal.

The same principle applies in contract disputes. In *Milligan v. Anderson*, 522 F.2d 1202, 1204–05 (10th Cir. 1975), the plaintiffs sought to rescind certain contracts between themselves and the defendant because of the allegedly fraudulent acts of the defendant's agent, the absent (but purportedly indispensable) person in the suit. The agent had entered into the oral contracts on behalf of his principal. The court found that the agent was not an indispensable party because the dispute was between the plaintiffs and the principal. The court noted that the agent had no personal interest in the contract which he negotiated for his principal.

The defendants rely heavily on *Glenny v. American Metal Climax, Inc.*, 494 F.2d 651, 653–54 (10th Cir. 1974), to establish a contrary rule of law. In *Glenny*, landowner plaintiffs sought injunctive relief and money damages from the parent companies of a corporation which operated a smelter. The plaintiffs were unable, under the constraints of diversity jurisdiction, to directly sue the subsidiary that operated the smelter. The court found that, in any action against the principal, the subsidiary was an indispensable party.

█ But the parent-subsidiary relationship of *Glenny* differs significantly from the principal-agent relationship in the instant case and dictates a result different from the one we reach here. "Generally a corporation which owns and controls another is not responsible for the liabilities of the latter." *G. E. J. Corp. v. Uranium Aire, Inc.*, 311 F.2d 749, 756 (9th Cir. 1962). To hold the parent liable, the subsidiary must be a "mere instrumentality" of the parent corporation. *Allegheny Airlines, Inc. v. United States*, 504 F.2d 104, 112–13 (7th Cir. 1974), *cert. denied*, 421 U.S. 978, 95 S.Ct. 1979, 44 L.Ed.2d 470 (1975). The de-

---

**12.** A judgment favorable to Stenograph creates no opportunities for prejudice to Croxford. Indeed, Croxford could possibly benefit from such a judgment under the relevant principles of collateral estoppel. *See Miller Brewing Co. v. Jos. Schlitz Brewing Co.*, 605 F.2d 990, 992 (7th Cir. 1979), *cert. denied*, 444 U.S. 1102, 100 S.Ct. 1067, 62 L.Ed.2d 787 (1980).

**13.** Despite the lack of diversity of citizenship vis-a-vis Pasco, Croxford could intervene in this action under Rule 24(a) if he is a necessary party under Rule 19(a) and the present defendants do not adequately protect his interests. Wright & Miller, *Federal Practice and Procedure* § 1917, at 603–04 (1972). Intervention is possible, of course, only if Croxford is aware of this action, but this is likely given the relationships involved. If necessary, the district court could convey any necessary information to Croxford by letter or informal notice as contemplated under Rule 19. Advisory Committee's Note to Rule 19, 39 F.R.D. 88, 93–94 (1966).

termination of the vicarious liability of the parent depends on the degree of control exercised by the parent over the subsidiary. *Id.; Fitz-Patrick v. Commonwealth Oil Co.,* 285 F.2d 726, 730 (5th Cir. 1960).

The court in *Glenny* declined to consider whether the subsidiary was the "alter ego" of the parent corporations except in the context of determining whether there was diversity jurisdiction. *Glenny,* 494 F.2d at 654–55. Thus, since the plaintiffs in *Glenny* could secure no relief from the parent corporations on a theory of vicarious liability, the subsidiary had to be deemed an indispensable party because it was the sole entity subject to any liability.[14] This rationale is clearly inapplicable to the instant case, however, where the principal would be liable for the torts of its agent or coconspirator.

 Quite apart from any prejudice to Croxford, Stenograph argues that *it* will be prejudiced in two ways by Croxford's absence from this suit. The first alleged source of prejudice concerns the possibility of an inconsistent result in any later litigation between Stenograph and Croxford. If Stenograph is found liable here, it may wish to assert a claim for contribution or indemnity against Croxford. But, potential indemnitors have never been considered indispensable parties, or even parties whose joinder is required if feasible. 3A Moore's Federal Practice ¶ 19.07–1[2.–2], at n.32 (2d ed. 1979). The same situation as to indispensability and joinder applies to joint tort-fea-

sors subject to a possible right of contribution. *Id.,* at n.45. Since the liability of potential indemnitors or joint tort-feasors is "several," one of a number of joint tort-feasors or a tort-feasor with a potential indemnitor may be sued alone.

The defendant, while he may be entitled to contribution or indemnity, cannot be subjected to double or multiple obligations since his liability is several for the entire amount, and though a verdict against him in a later suit for contribution after a verdict against him in the tort suit may be logically inconsistent, it does not subject him to inconsistent obligations. . . . To dismiss the action on the ground that the absent person is indispensable . . . would be to deny a principle [sic] aspect of several liability.

*Id.* Stenograph can always protect itself from the possibility of inconsistent verdicts by impleading Croxford under Rule 14 as a person "who is or may be liable to [Stenograph] for all or a part of the plaintiff's claim." Fed.R.Civ.P. 14(a).[15] Contrary to defendant's assertion, this does not use Rule 14 to thwart Rule 19. Rather, the existence of the Rule 14 provisions demonstrates that parties such as Croxford who may be impleaded under Rule 14 are not indispensable parties within Rule 19(b). If persons subject to rights of indemnity or contribution were always indispensable parties, there would not be a need for the impleader provisions of Rule 14. *See Willis v. Semmes, Bowen & Semmes,* 441 F.Supp.

---

**14.** Where injunctive relief is involved, assuming that the subsidiary is bound by an injunction against a parent as a "person in active concert" under Rule 65(d), *see Computer Searching Service Corp. v. Ryan,* 439 F.2d 6, 9 (2d Cir.), *cert. denied,* 404 U.S. 871, 92 S.Ct. 62, 30 L.Ed.2d 115 (1971), we decline to follow the language in *Glenny* with respect to prejudice to the subsidiary from such injunctive relief. As noted above, Rule 65(d) contemplates that certain parties will be bound even if absent, negating any prejudice under Rule 19(b).

**15.** A party may be impleaded under Rule 14 as a person liable to an existing defendant even if his presence would otherwise destroy diversity for jurisdictional purposes. 3 Moore's Federal Practice ¶ 14.26, at 14–525 (2d ed. 1980). Rule 14 does not create any right to indemnity or

contribution but merely provides a procedure for efficiently implementing rights created by other laws; here we must apply the law of Illinois, including any relevant choice of law rules, because jurisdiction is based on diversity of citizenship. Defendants assert, Brief for Appellees at 11, that Illinois law governs the tort claims alleged in the instant case and Illinois provides a substantive right to indemnity when a principal is found vicariously liable based on the acts of its agent. *See Stawasz v. Aetna Insurance Co.,* 99 Ill.App.2d 131, 134, 240 N.E.2d 702, 703–04 (1968). Hence, on the basis of the allegations before us, Stenograph's ability to implead Croxford under Rule 14 is clear. Defendants also do not challenge the applicability of Rule 14 to Croxford.

**504**

1235, 1246 (E.D.Va.1972); 3A Moore's Federal Practice ¶ 19.07–1[2.–2], at 19–145 (2d ed. 1979).

The second factor under Rule 19(b) provides independent support for this conclusion. This factor requires that the district court evaluate

> the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided. . . .

Fed.R.Civ.P. 19(b). The Advisory Committee's Note which was appended when Rule 19 was amended in 1966 indicates that the phrase "other measures" includes measures open to the *defendant* to avoid any prejudice.[16] 39 F.R.D. 88, 92 (1966). The opportunity of the defendants to implead Croxford under Rule 14 avoids any potential for prejudice to Stenograph from the possibility of inconsistent judgments.

Stenograph also complains, and the district court stressed, that Croxford may be unavailable as a witness in this action if not made a party.[17] Certainly Croxford's activities are the central focus of this litigation. His testimony could be important if not decisive for either side. The district court was concerned because Croxford is apparently beyond the subpoena powers of the court.[18]

We are reluctant, however, to conclude that the unavailability of the absent party's testimony is necessarily a source of prejudice to Stenograph. We are concerned with the inherently speculative nature of Stenograph's position. We would have to assume that Croxford would not voluntarily testify. We must then also assume that Croxford's testimony would be helpful to Stenograph. At this preliminary stage of the proceedings, little or no relevant evidence has been presented to guide us with respect to either of these assumptions.[19]

But, despite the difficulties peculiar to the instant case, we are not prepared to say that the unavailability of testimony from the absent party is never a source of prejudice cognizable under Rule 19(b). Rule 19(b) embodies practical considerations that go beyond the rules of *res judicata* and the binding effect of judgments. *Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 110, 88 S.Ct. 733, 738, 19 L.Ed.2d 936 (1968). In a proper case the prejudice from the unavailability of the absent person's testimony may be clear enough to be a substantial consideration in the balancing undertaken in the course of an indispensability calculation under Rule 19(b). In addition, the factors set out in Rule 19(b) are not intended to exclude other relevant considerations. Advisory Committee's Note to Rule 19, 39 F.R.D. 88, 92 (1966).

However, the possible prejudice from the unavailability of Croxford's testimony must be carefully analyzed. Circumstances allegedly creating prejudice within the meaning of Rule 19(b) must be compared with the circumstances which would pertain if the absent person were a party to the action. In order for the unavailability of Croxford's testimony to be the basis for a claim of prejudice, we must conclude (as the district court apparently did) that Croxford would testify if he were made a party. Presumably, Croxford would testify to

**16.** The Committee's examples include defensive interpleader and counterclaims under Rule 13(h). 39 F.R.D. 88, 92 (1966).

**17.** The concern arises because Croxford is probably now living in Nigeria.

**18.** Under Rule 45(e)(2) of the Federal Rules of Civil Procedure, subpoenas can be directed at witnesses in foreign countries as provided in 28 U.S.C. § 1783 (1976). Section 1783, however, does not extend the subpoena power to persons like Croxford who are not citizens or residents of the United States. *United States v. Haim,* 218 F.Supp. 922, 926 (D.C.N.Y.1963).

**19.** In this connection, the only relevant factor mentioned by the parties concerns the alleged admission made by Croxford to an officer of Pasco that Croxford breached a trust with respect to Pasco. Appendix at pp. 144–45. Stenograph complains that this "admission" increases the prejudice that it will suffer if Croxford's testimony is not available. The admission, however, falls far short of implicating Stenograph in any tortious conduct. Even assuming that the admission is damaging to Stenograph's position, it is not clear that Croxford's complete testimony at trial will somehow remedy the damage.

avoid a possible default judgment on all or a part of any claim he faced.

But, as a response to the problem in the instant case, defendants can invoke the protective device already discussed above, i. e., impleader under Rule 14(a), to remedy any prejudice threatened by the unavailability of Croxford's testimony. Given defendants' ability to make Croxford a party by impleader, any claim of prejudice based upon the assumed unavailability of his testimony must fall.[20]

As a final matter, we note that any judgment in Croxford's absence will be adequate within the third factor of Rule 19(b). This factor concerns the public interest in the complete and efficient resolution of controversies by wholes. *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 111, 88 S.Ct. 733, 738, 19 L.Ed.2d 936 (1968). If Pasco wins, it can be accorded complete monetary relief from the coffers of the present defendants. The existing defendants would also be bound if the district court finds it appropriate to enter an injunction. Any injunctive relief would bind Croxford only to the extent of his agency but such a limitation poses no problem under the allegations of the complaint.

There remains, however, a possibility of subsequent litigation between Croxford and Stenograph over the ultimate liability for any money damages. The alternative availability of a single state court action against both Stenograph and Croxford points up a disadvantage of this federal diversity action. But the prospect of later litigation is not in itself sufficient to make Croxford an indispensable party. The class of parties with claims most likely to lead to this sort of relitigation—tort-fea-

sors with claims for indemnity or contribution—are not even necessary parties under Rule 19(a) let alone indispensable parties under Rule 19(b). As noted by the Advisory Committee, Rule 19(b)

> is not at variance with the settled authorities holding that a tort-feasor with the usual "joint and several" liability is merely a permissive party to an action against another with like liability. *See* 3 Moore's Federal Practice, § 2153 (2d ed. 1963).

39 F.R.D. 88, 91 (1966). Whether Croxford and Stenograph are "joint tort-feasors" or in a relationship supporting an indemnity claim,[21] the possibility of a subsequent suit based on either relationship was not an eventuality that Rule 19 was designed to avoid.

There is also the possibility of later litigation by Pasco against Croxford if the instant suit against Stenograph is unsuccessful. To a degree, the potential for such a suit may be reduced by the application of collateral estoppel. In addition, if Pasco's claims should rest on different facts, such as an action based on the Pasco-Croxford employment contract, a joint resolution would not promote the efficiency sought by Rule 19. *Morgan Guaranty Trust Co. v. Martin*, 466 F.2d 593, 598–99 n.7 (7th Cir. 1972). In any event, the prospect of further litigation between Pasco and Croxford is not sufficiently significant to make Croxford an indispensable party.

Thus we conclude that the district court erred[22] in dismissing this action from the federal court system, an otherwise quite appropriate forum for the claims of a foreign national, because of Croxford's absence from the suit. We think that Stenograph's crocodile tears at, *inter alia*, Pasco's alleged

---

**20.** This repeated application of Rule 14 to this case means that all persons subject to impleader by the defendant are not indispensable parties. This is, however, merely an extension of the settled doctrine that Rule 19(b) was not intended to require the joinder of persons subject to impleader under Rule 14 such as potential indemnitors. Advisory Committee's Note to Rule 19, 39 F.R.D. 88, 91 (1966).

**21.** This is apparently a question of state law. *See Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 125 n.22, 88 S.Ct. 733, 746, 19 L.Ed.2d 936 (1968).

**22.** We are mindful that we are reviewing a matter arguably within the discretion of the district court. This is the apparent standard of review set out in *Hansen v. Peoples Bank of Bloomington*, 594 F.2d 1149, 1150 (7th Cir. 1979). Other Seventh Circuit decisions have reversed findings of indispensability, however, without stating that the district court judge abused his discretion. *See, e. g., Bio-Analytical Services, Inc. v. Edgewater Hospital, Inc.*, 565 F.2d 450 (7th Cir. 1977), *cert. denied*, 439 U.S.

inability to obtain complete relief or the purported burdens on Croxford constitute insufficient reason to relegate this suit to the courts of Illinois.

REVERSED.

820, 99 S.Ct. 84, 58 L.Ed.2d 111 (1978); *Bonnet v. Trustees of Schools of Township 41 North,* 563 F.2d 831 (7th Cir. 1977). A Rule 19(b) determination is not one that obviously requires such deference to the district court although we are willing to accept this standard for our review of this case. We note, however, that our reversal might have been unnecessary had appellant been more thorough in alerting the district court to the appropriate considerations under Rule 19(b), and in particular, to the interaction of Rule 14 with Rule 19(b).