Carl G. SCHMIDT, Trustee of the Carl G. Schmidt Trust, dated January 4, 1972, and Successor Trustee of the Adelaide M. Schmidt Trust, dated January 4, 1972, Plaintiff,

v.

E.N. MAISEL AND ASSOCIATES, Defendant.

No. 83 C 6674.

United States District Court, N.D. Illinois, E.D.

March 15, 1985.

Stephen A. Cohen, Greenberger, Krauss & Jacobs, Chicago, Ill., for plaintiff.

Robert R. Tepper, Alex Elson, Leonard Schanfield, Rosenthal & Schanfield, Chicago, Ill., for defendant.

Memorandum

LEIGHTON, District Judge.

This cause is before the court on defendant's motion, pursuant to Rules 19 and 12(b), Fed.R.Civ.P., to dismiss this action for plaintiff's failure to join an indispensable party, the joinder of which would destroy this court's diversity jurisdiction. For the following reasons, the motion is granted.

I

Plaintiff, Carl Schmidt, a Florida citizen, is a limited partner of B-Y Development, an Illinois limited partnership formed for the purpose of acquiring, developing and owning the Brickyard Shopping Center in Chicago. Defendant is E.N. Maisel and Associates ("Maisel"), the general partner of B-Y Development. Maisel is, itself, a Michigan limited partnership whose partners consist of Illinois and Michigan citizens. B-Y Development has a total of thirty-seven limited partners.

Plaintiff's complaint is stated in four counts; jurisdiction is alleged pursuant to 28 U.S.C. § 1332. Count I alleges that Maisel acted beyond its authority by making unauthorized expenditures on plans to expand the shopping center in violation of the limited partnership agreement. In connection with the planned expansion, Maisel sent a written proposal to the limited partners of B-Y Development, which stated that if all the limited partners agreed to the expansion then B-Y Development would acquire additional land and proceed with the expansion. However, in the event that only a majority of the limited partners agreed, then a new partnership with Maisel as general partner and the acquiescing limited partners of B-Y Development as limited partners, would be formed to undertake the expansion. Twenty-five of the thirty-seven partners agreed to the expansion; plaintiff did not. Maisel subsequently formed a new partnership with those limit-

ed partners who consented to accomplish the expansion. Plaintiff alleges that Maisel has expended over $1,000,000 in funds of B-Y Development on plans, specifications, attorneys' fees, accountants' costs, surveys, soil tests and other predevelopment costs in violation of the limited partnership agreement. In this count, Schmidt seeks "entry of a preliminary and permanent injunction prohibiting Defendant ... from making any further expenditures of Partnership funds in connection with the Proposal or the Expansion" and for the "entry of an Order directing Defendant to reimburse the Partnership for all expenditures of Partnership funds made in connection with the Proposal and the Expansion."

In Count II, it is alleged the expansion requires that a four-acre tract of land within the existing shopping center be exchanged for a parcel of land which is not part of the existing shopping center and that the expansion requires B-Y Development grant an easement to the new partnership over part of the existing shopping center; both of which are alleged violations of the limited partnership agreement. It is further asserted that the exchange of property and granting of an easement constitute self-dealing by Maisel. Plaintiff in this count seeks the "entry of a preliminary and permanent injunction prohibiting Defendant ... from exchanging parcels of land," and for "entry of a preliminary and permanent injunction prohibiting Defendant ... from granting any easements...."

Count III alleges that Maisel, in connection with the expansion, is intending to subject the shopping center to a lien mortgage; that such a mortgage is unauthorized and would constitute self-dealing by Maisel. Plaintiff seeks the "entry of a preliminary and permanent injunction prohibiting Defendant ... from subjecting the Center to the lien of a mortgage...."

Count IV alleges that all of the above-described acts constitute a breach by Maisel of its fiduciary duty to B-Y Development and seeks the "entry of an Order removing Maisel as general partner of the partnership and authorizing the limited partners to select a new general partner."

When the original complaint was filed, it named as plaintiffs Carl Schmidt, Adeline Schmidt (she died after suit was filed; her husband, Carl Schmidt succeeded to her interest and has been substituted for her in the amended complaint), and Harold Goldman, an Illinois citizen. Maisel moved to dismiss the original complaint contending that complete diversity was lacking because Goldman is an Illinois citizen and some of the limited partners of Maisel are also Illinois citizens. At the time the court ruled on the motion, the Seventh Circuit Court of Appeals had not passed on the question of the citizenship of a limited partnership for diversity purposes. Accordingly, this court adopted the reasoning of several circuits which have held that the citizenship of a limited partnership for diversity purposes is determined only by the citizenship of the general partner and identity of citizenship between a limited partner and plaintiff does not destroy diversity. *See Colonial Realty Corp. v. Bache & Co.,* 358 F.2d 178, 184 (2d Cir.1966); *Lee v. Navarro Savings Ass'n,* 597 F.2d 421, 425–26 (5th Cir.1979). Therefore, the court denied the motion. Subsequently, the Seventh Circuit in *Elston Investment Ltd. v. David Altman Leasing,* 731 F.2d 436 (7th Cir.1984), held that for diversity purposes, a limited partnership is a citizen of each state in which one of its partners, limited or general, is a citizen. Pursuant to that decision, this court entered an order issuing a rule to show cause why this suit should not be dismissed in light of *Elston Investment.*

In response to the rule to show cause, plaintiff filed a first amended complaint. The complaint is identical to the originally filed complaint with the exception that Harold Goldman, the Illinois citizen, is no longer a named plaintiff. Defendant now moves for dismissal contending that Harold Goldman and the limited partners who voted against the expansion are indispensable parties which must be joined in this action. It is undisputed that the joinder of any of the limited partners would destroy diversi-

ty because they all are either Illinois or Michigan citizens and Maisel, pursuant to the holding of *Elston Investment,* is a citizen of both Illinois and Michigan.

## II

■ Rule 19 establishes the framework for a court's consideration of questions of indispensable parties. The rule requires a two-step analysis. Rule 19(a) sets forth the criteria to be used in ascertaining whether an absent party should be joined if feasible, but only if joinder of such persons would not destroy the court's jurisdiction. If, as is undisputed in the present case, joinder of the absent parties would destroy diversity, Rule 19(a) is inapplicable.[1] *Pasco International (London) Ltd. v. Stenograph Corp.,* 637 F.2d 496, 500 (7th Cir. 1980); *Bio-Analytical Services v. Edgewater Hospital,* 565 F.2d 450, 452 (7th Cir. 1977); *Bonnet v. Trustees of Schools of Township 41 North,* 563 F.2d 831, 874 (7th Cir.1977). The relevant inquiry for the court, therefore, is whether, under Rule 19(b), "in equity and good conscience the action shall proceed among the parties before it" or whether the absent party is indispensable requiring dismissal of the action. Rule 19(b) lists four factors which must be weighed in determining if the absent party is indispensable:

> first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by shaping relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

1. The court has no trouble concluding that, under Rule 19(a), the absent limited partners are necessary parties who should be joined if feasible. Where several limited partners bring an action against the partnership's general partners, the other limited partners are parties who should be joined in the action. *Hagstrom v. Bruetman,* 572 F.Supp. 692, 702 (N.D.Ill.1983); *Gottlieb v. Vaicek,* 69 F.R.D. 672 (N.D.Ill.1975),

Rule 19 is to be applied pragmatically, with a focus on a realistic analysis of the facts of each case. *Provident Tradesmens Bank v. Patterson,* 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968).

■ The first consideration is the prejudice to the absent party or those already parties. Considering the prejudice to Maisel first, it is clear that without joinder of the absent limited partners Maisel would be subject to repetitious lawsuits with conceivably inconsistent verdicts. The provisions of Rule 19 are designed to protect defendants from multiple, double, or inconsistent lawsuits. *Hagstrom v. Bruetman,* 572 F.Supp. at 701; *Shelley v. Noffsinger,* 91 F.R.D. 263, 26 (N.D.Ill.1981). *See* Advisory Committee Notes to 1966 Amendment to Rule 19. Plaintiff contends that the threat of multiple suits is not realistic because none of the absent limited partners has filed suit against Maisel since this case has been pending, and thus, have no interest in pursuing relief against Maisel. However, Harold Goldman's status as co-plaintiff in the original complaint indicates to the court that at least Goldman, and possibly other limited partners, have a realistic interest in pursuing claims against Maisel.

The first factor under Rule 19(b) requires the court to also consider the prejudice to the absent limited partners. It is plaintiff's position that because the absent limited partners would not be bound by either res judicata or collateral estoppel by a judgment for Maisel in the present case, they are not prejudiced. While this argument would seem to require the court to delve into the intricacies of res judicata and collateral estoppel, the court need not concern itself with a technical application of preclusion law because plaintiff misconstrues the type of "prejudice" contemplated by Rule

*aff'd* 544 F.2d 523 (7th Cir.1976). *Cf. Smith v. Smith Barney, Harris, Upham & Co.,* 505 F.Supp. 1380 (W.D.Mo.1981); *Camden Securities Co. v. Lupowitz,* 500 F.Supp. 653 (E.D.Pa.1980). However, because the joinder of the absent limited partners would deprive the court of jurisdiction, the court must determine, under Rule 19(b), whether "in equity and good conscience" the action could proceed without them.

19. Courts construing this rule have consistently held that "prejudice" within the meaning of Rule 19 does not require that a judgment have a strict res judicata or collateral estoppel effect vis-a-vis the absent parties; rather the standard is whether "as a practical matter" a judgment in the suit before the court would prejudice the absent parties. *See, e.g., Evergreen Park N & C Home Inc. v. American Equitable Assurance Co.*, 417 F.2d 1113 (7th Cir.1969); *Bloch v. Sun Oil*, 335 F.Supp. 190, 195 (W.D.Ok.1971); *Gottlieb v. Vaicek*, 69 F.R.D. 672 (N.D.Ill.1975).

For example, *Bloch v. Sun Oil*, involved an action between lessors and lessees of similar oil and gas leases. The suit sought a declaration that royalties were owing under the leases. While the absent parties would not have been strictly bound by either res judicata or collateral estoppel, the court held that they were indispensable parties because disposition of the action would require the court to interpret the leases and its interpretation would have a significant precedential effect on any subsequent litigation by the absent parties. Therefore, while the absent parties were not strictly bound by the judgment, as a practical matter their interests would be prejudiced by the disposition of the case without their presence.

Similarly, in the present case, the absent limited partners' interests would as a practical matter be prejudiced by a disposition of this suit without their presence. Plaintiff alleges that Maisel has, through certain of its actions in connection with the proposed expansion, violated the partnership agreement and breached its fiduciary obligation. In disposing of this case, the court would be required to interpret the partnership agreement to determine if such actions by Maisel violated the agreement. The construction given to the partnership agreement by this court would carry great weight in any subsequent proceedings by the absent limited partners against Maisel. As a result, the absent limited partners would as a practical matter be prejudiced by disposition of this action without their presence. Moreover, because of the broad injunctive relief sought, especially the removal of Maisel as general partner, all the nonjoined partners' interests would be severely prejudiced by a judgment rendered in their absence.

The second consideration is to what extent, by protective measures in the judgment, can the court minimize the prejudicial impact of its decision on the absent parties. The relief sought by plaintiff includes the return by Maisel to the partnership of $1,000,000 allegedly expended in violation of the partnership agreement; enjoining Maisel from performing certain actions with respect to the proposed expansion; and the removal of Maisel as general partner. Plaintiff does not seek any individual monetary damages, but rather, seeks relief which would effect everyone involved in the partnership. The court does not see, and plaintiff does not show, how it could shape the injunctive relief sought by plaintiff to minimize the effect on everyone involved with the partnership. Plaintiff, citing *Francis Oil & Gas, Inc. v. Exxon Corp.*, 661 F.2d 873 (10th Cir.1981), states that a judgment could properly be shaped, but does not state how. The court has carefully reviewed *Francis* and finds that it has no application to the present case. The plaintiff in *Francis* sought only money damages; he was not seeking the broad injunctive relief that is sought here. Also, plaintiff has not shown how the court could minimize the prejudicial impact its interpretation of the partnership agreement would have on the nonjoined partners.

The third factor, whether an adequate judgment can be rendered in the absence of the nonjoined parties, calls attention to the public interest in the complete and efficient resolution of controversies by wholes. *Pasco International (London) Ltd. v. Stenograph Corp.*, 637 F.2d at 505. The Supreme Court reads the third factor "to refer to this public stake in settling disputes by whole, whenever possible." *Provident Tradesmens Bank v. Patterson*, 390 U.S. at 102, 88 S.Ct. at 733. While it is clear that this court could enter the injunc-

tive relief sought by plaintiff, this would not foster the interest in settling disputes by whole since any of the limited partners' claims for damages against defendant would not be settled. It is preferable to have all claims against the general partner settled in one single proceeding. Separate suits in separate forums by the limited partners do not foster the public or court's interests in settling entire controversies in one action if possible. The question of whether this dispute is capable of being disposed of in one forum is the last consideration under Rule 19(b).

The fourth factor is "whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder." The state courts of Illinois are a forum available to plaintiff. Plaintiff contends that because some of the nonjoined limited partners are not residents of Illinois, they could object on jurisdictional grounds to being joined in an action in Illinois. If this were so, this factor alone would weigh heavily in favor of nondismissal. *Pasco International (London) Ltd. v. Stenograph Corp.,* 637 F.2d at 501 n. 9. However, the court does not agree with plaintiff that the non-Illinois limited partners could not be joined in an action in Illinois. The partnership was formed for the express purpose of buying and managing a shopping center located in Illinois. It is undoubted that the limited partners knew of the partnership purpose when they invested. It would not be unreasonable, nor contrary to law, to join the limited partners of a partnership into an action against the general partners of that partnership over the general partner's management of the partnership's affairs in the state where the only asset of the partnership, a shopping center, is located.

Another aspect of this case leads the court to conclude that the other limited partners are indispensable and in equity and good conscience this suit should be dismissed. This fact is the presence in the original complaint of Harold Goldman as plaintiff. His status as plaintiff undisputedly leads to the conclusion that he has an interest in the outcome of this litigation and the only reason he was dropped as plaintiff was to preserve this court's diversity jurisdiction. This fact makes his case similar to *Potomac Electric Power Co. v. Babcock & Wilcox Co.,* 54 F.R.D. 486 (D.Maryland 1972) cited by defendants, in which the court dismissed a suit for failure to join an indispensable party after certain plaintiffs were dropped when it was determined that their presence in the suit would destroy diversity. The court commented:

It seems inappropriate under general principles of equity that plaintiffs should be permitted to pick and choose which necessary parties they will name for purposes of conferring federal jurisdiction on this Court. If indispensability is a benefit which can be waived by a party for the purpose of securing diversity jurisdiction, federal courts would lose control over their jurisdictional boundaries. Equity and good conscience would seem to require that under circumstances as present here, parties should present their claims in state courts rather than attempt to manipulate jurisdiction by dropping plaintiffs with a substantial interest in the claim solely for the purpose of retaining jurisdiction in the federal court.

54 F.R.D. at 493.

This comment is very appropriate in this case where plaintiff has attempted to manipulate jurisdiction by dropping a party with a substantial interest in the claim, leaving defendant exposed to the possibility of multiple suits, solely for the purpose of retaining jurisdiction in this court. Federal jurisdiction is not a benefit which can or should be manipulated. Plaintiff, along with Harold Goldman and the other limited partners, should bring this action in state court where all the claims against Maisel, both equitable and legal, can be heard in one action.

### III

In conclusion, for the reasons stated above, the court finds that Harold Goldman and the other limited partners are indispensable, that joinder of these parties would destroy diversity and that in equity

and good conscience this action should be dismissed. Accordingly, defendant's motion to dismiss is granted; and this suit is dismissed in its entirety.

So ordered.