**W. Reed CHADWICK, Plaintiff,**

**v.**

**ARABIAN AMERICAN OIL COMPANY and Dr. Mohammed Ali, Defendants.**

**Civ. A. No. 86–231 CMW.**

United States District Court,
D. Delaware.

March 3, 1987.

Bernard A. Van Ogtrop, of Cooch & Taylor, Wilmington, Del., for plaintiff.

Charles S. Crompton, Jr., Peter M. Sieglaff, and Richard L. Horwitz, of Potter, Anderson & Corroon, Wilmington, Del., for defendant Arabian American Oil Co.

## OPINION

CALEB M. WRIGHT, Senior District Judge.

This case is governed by what the Angel Gabriel said to the Prophet Mohammad in the Seventh Century A.D.

In this diversity action, plaintiff has filed a complaint seeking damages for the alleged medical malpractice of defendant, Arabian American Oil Company ("Aramco"). Under Delaware choice of law rules, Saudi Arabian law applies because that country was the locus of the injury in question. Saudi Arabian law, known as the Shari'a and revealed to the Prophet Mohammad centuries ago, does not recognize the doctrine of vicarious liability which is the cornerstone of plaintiff's medical malpractice theory. For this reason, the Court will grant defendants' motion to dismiss under Fed.R.Civ.P. 12(b)(6). The action also must be dismissed for failure to join indispensible parties pursuant to Fed.R. Civ.P. 19.

FACTS

Founded in 1933, as a vehicle to compete with the other Great Powers for strategic Middle Eastern oil resources, the Arabian American Oil Company (Aramco) explores, produces, refines and sells oil in Saudi Arabia. Aramco remains a Delaware corporation with its principal place of business in Dhahran, Saudi Arabia. In 1980, the Saudi Arabian government acquired beneficial title to Aramco's assets, facilities, and its concession while Aramco retained legal title. Although Aramco now manages its assets for the Saudi government, legal and equitable title to Saudi Arabian real estate remains with the Saudi government. Although Aramco is a Delaware corporation, it transacts no business in the United

States and its headquarters remain in Dhahran, Saudi Arabia. Aramco maintains an office in Washington D.C. to sustain relations with the State Department, diplomatic missions and various international institutions. Aramco is the defendant in this action. (Drucker Aff., ¶ 2).

The other defendant in this action is Dr. Mohammed Ali, a citizen of India and a resident of Saudi Arabia. Dr. Ali was an employee of the National Medical Services Company, Ltd. ("NMS").

Plaintiff, Chadwick, is a Florida citizen who was employed as a safety supervisor in Saudi Arabia for Lummus Alireza Limited Company ("Lummus"). His Saudi Arabian employment contract was with Lummus and did not mention Aramco.

Aramco contracted with Lummus and NMS to run its Saudi Arabian facilities.[1] Lummus performed construction management services at various Aramco project sites. Lummus then hired its own employees, including plaintiff, to fulfill its obligations to Aramco. Aramco also contracted with NMS to operate a medical clinic and provide treatment for employees at various Aramco construction camps.

One of the medical facilities operated by NMS was the Aramco Construction Camp Clinic where plaintiff, an employee of Lummus, sought medical help in November, 1983. As an employee of Lummus, under a contract between Aramco and Lummus, plaintiff was obligated to use the Aramco construction camp clinic for any medical problems. (Drucker Aff., ¶ 3).

The problems Chadwick had that November included stomach pains, cramps and loss of appetite. Dr. Ali diagnosed the problem as gas and gave plaintiff antacid as treatment. The plaintiff repeatedly returned to the clinic and was x-rayed in January 1984. In March 1984, an upper

G.I. was done by Dr. Ali and he diagnosed the problem as a duodenal ulcer. (Chadwick Aff., ¶ 5).

While on leave in the United States in September of 1984, Mr. Chadwick was diagnosed by a Florida docter as having a malignant stomach tumor. On September 21, 1984, his total stomach, spleen, and a portion of his liver and pancreas were removed. He has been unable to work since his operation. (Chadwick Aff., ¶ 6).

Plaintiff filed a complaint in the United States District Court for the Middle District of Florida on October 30, 1985. The complaint alleged negligence of Aramco and Dr. Ali. Dr. Ali has never been served.

On November 27, 1985, Aramco moved to dismiss this action for lack of *in personam jurisdiction* and to stay discovery pending disposition of the motion to dismiss. On December 19, 1985, the Florida District Court stayed discovery pending disposition of the motion to dismiss.

Plaintiff responded by filing a motion to transfer to the District of Delaware under 28 U.S.C. § 1406, and the Florida court granted his motion on May 20, 1986.

Following transfer to this District, Aramco filed a motion to dismiss for failure to state a claim and for failure to join and serve indispensable parties. Aramco also filed a motion to stay discovery pending decision on its motion to dismiss and notice of intent to rely on foreign law. Plaintiff has agreed to stay discovery. The Court heard argument on the motion on January 6, 1987.

The Court grants Aramco's Motion to Dismiss on both grounds.

DISCUSSION

I. DISMISSAL FOR FAILURE TO STATE A CLAIM

The Court will treat defendant's motion to dismiss as one for summary judgment,

---

1. NMS and Lummus each had complex contractual arrangements with Aramco. Both contracts were entered into in Saudi Arabia and provided that Saudi law would govern. (Defendant Ex. A, Schedule E, ¶ 2; Ex. B, Schedule E, ¶ 2.1). Both contracts made clear that NMS and Lummus were independent contractors, and that no third party beneficiary rights existed thereunder. Both contracts provided that

NMS and Lummus would indemnify Aramco for any claims made against it. (Defendant Ex. A, Schedule A, ¶ 8.1; Ex. B, Schedule A, ¶ 10.3.-1). Notwithstanding this provision, NMS refused to indemnify Aramco for any costs or expenses arising from plaintiff's alleged injuries unless his suit is determined in a Saudi court. (Defendant's Ex. D.).

because both parties have supplemented the record with affidavits. *See Carter v. Stanton*, 405 U.S. 669, 92 S.Ct. 1232, 31 L.Ed.2d 569 (1972). Plaintiff did not contest this method of proceeding at the hearing held before this Court. *See also J.M. Mechanical Corp. v. United States*, 716 F.2d 190, 197 (3d Cir.1983). To achieve summary judgment, Aramco must demonstrate that no genuine issue of material fact exists and that judgment in its favor is warranted as a matter of law. Fed.R. Civ.P. 56(c). Unlike a motion on the pleadings, plaintiff cannot rely on mere allegations or unsupported argument, but instead must present facts by affidavit or otherwise to defeat the motion. Fed.R.Civ.P. 56(e). Unlike a motion to dismiss, the notion that pleadings should be liberally construed is not relevant to summary judgment proceedings. *See Devex v. General Motors Corp.*, 579 F.Supp. 690, 693 n. 3 (D.Del.1984).

Applying these standards, summary judgment must be entered for the defendants.

### A. Saudi Law Is The Applicable Law

In diversity cases, the district court will ordinarily apply the substantive law of the forum state, including its choice of law rules and the federal procedural law. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Rees v. Mosaic Technologies, Inc.*, 742 F.2d 765, 767 (3d Cir.1984). Because this suit was transferred to this Court under 28 U.S.C. § 1406(a), the law of the transferee state, Delaware, applies. *Peckenpaugh v. Cargill*, — F.Supp. —, No. 84–721–JJF, slip op. at 3 (D.Del. June 30, 1986); *Weber v. McDonald's System of Europe, Inc.*, — F.Supp. —, No. 84–442–WKS, slip op. at 6 (D.Del. May 15, 1985). Delaware choice of law rules determine what law applied to Aramco's motion to dismiss.

Delaware law requires that the law of the place of injury—*lex loci delicti*—applies to negligence actions. *Friday v. Smoot*, 211 A.2d 594 (Del.Supr.1965). Because the basis of plaintiff's complaint is that he received improper medical diagnosis and treatment in Saudi Arabia, Saudi law must apply. Saudi law also governs any issues of contract interpretation regarding the contracts signed between Aramco, Lummus, NMS and plaintiff Chadwick. All the contracts involved in this action—the Chadwick-Lummus; Ali–NMS; Aramco-Lummus; and Aramco–NMS contracts—were executed in Saudi Arabia, contemplated services to be performed in Saudi Arabia and explicitly provided that Saudi law would govern their interpretation.[2]

### B. Plaintiff's Complaint Fails To State A Claim

#### 1. Saudi Law does not recognize vicarious liability

Plaintiff's complaint alleges that Aramco and Dr. Ali negligently diagnosed and treated his physical condition. Plaintiff alleges that Aramco can be held liable for the allegedly negligent acts of Dr. Ali, an NMS employee, on two alternative grounds: (1) that Aramco is the employer of NMS and is liable under the doctrine of respondeat superior; and (2) that even if NMS is an independent contract, Aramco is liable for its acts because Aramco "controlled" NMS's performance of its contractual duties. Neither of these theories survives under Saudi law.

Both of plaintiff's arguments are based on concepts of vicarious liability. Plaintiff contends that he should recover either under the doctrine of respondeat superior, or the doctrine of control over the physical operations of an independent contractor. Plaintiff, however, in his answering brief failed to rebut, or even address, Aramco's argument that Saudi Arabian law recognizes no concept of vicarious liability that could allow plaintiff a theory upon which to recover. Moreover, these points of Saudi

**2.** Fed.R.Civ.P. 44.1 provides that: "[t]he court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination shall be treated as a ruling on a question of law."

Arabian law were conceded at oral argument held before this Court on January 6, 1987.

Under Saudi Arabian law, vicarious liability is not recognized unless it is proven that an actor's free will is obliterated by the person directing the actor to act. Nazer Aff., ¶ 34. The Shari'a, the common law of Saudi Arabia, "has a strict rule that responsibility for human action is individual and not vicarious." *Id.* Plaintiff does not challenge this principle of Saudi law. Nor has plaintiff presented any evidence that Aramco directed NMS or Dr. Ali to provide improper medical care to plaintiff, or that, even if such directions were given, that they obliterated the free will Dr. Ali presumably exercises in treating his patients.

Without such evidence, plaintiff cannot establish any liability on the part of Aramco as a matter of law.

### 2. Plaintiff Is Not An Aramco Employee Under Saudi Contract Law

■ Saudi law requires employers to provide medical care to employees. Plaintiff Chadwick, however, was an employee of Lummus, an independent construction contractor, and not of Aramco. Lummus is not and cannot be made a party to this action. Aramco's contract with Lummus, furthermore, must be strictly construed. The contract makes no mention of Chadwick and states that Lummus personnel shall not be deemed to be the servants, agents or employees of Aramco. (Drucker Aff., Schedule A, ¶ 24.4). Aramco, therefore, owed no contractual duty to Chadwick to provide medical care.

### 3. Saudi Law Does Not Recognize A Third Party Claim

■ According to Saudi law, only parties to a contract can enforce the terms thereof, and third party beneficiary rights do not exist.[3] (Nazer Aff. ¶¶ 27, 29–30). The Lummus-Aramco contract specifically incorporates the principle of Saudi law, by providing that third party beneficiary rights cannot be enforced under the contract. (Drucker Aff., Defendant's Ex. B, Schedule A, ¶ 24.5).

Plaintiff does not offer any evidence to contradict defendant's interpretation of Saudi Arabian law. Plaintiff offers only the unsupported affidavit of a Charles Inderwiesen to establish that Aramco somehow owed a duty to Chadwick. Unlike defendant's affiant, Nazer, Inderwiessen is neither a lawyer nor an expert in Saudi law. Rather, he is an American who worked in Saudi Arabia for over two years in a position that required no knowledge of Saudi law. His affidavit provides no bases to establish his knowledge nor does it establish his qualifications as an expert in Saudi law. The affidavit cites neither statutory law (ANZIMA) nor common law (Shari'a) principles to rebut Nazer's declarations of applicable law. Although a court may consider any materials presented on foreign law, the trial judge is free "to give them whatever probative value he thinks they deserve." 9 Wright & Miller, *Federal Practice and Procedure* Civil § 2444 at 406 (1971). This Court will give no probative value to the Inderwiesen affidavit.

Any dispute over Saudi law—and there does not appear to be one here—does not create a genuine issue of material fact. Disputes over foreign law raises questions of law, not fact, and therefore do not pre-

---

**3.** The reason third parties cannot claim a benefit from the actions of contracting parties is deeply rooted in Saudi history. Prior to the revelations received by Mohammad in the Seventh Century A.D., and codified in the Qur'an, Saudi Arabia was inhabited by a collection of warring tribes. The time period prior to the Qur'an is known as the Period of Ignorance before Islam. During this period, if one member of a tribe killed a member of a second tribe, the entire membership of the first tribe was deemed responsible for the death. This rule of collective and vicarious responsibility was finally ended with the words of God as transmitted by the Prophet. So, too, was the perpetual feuding and bloodshed amidst tribes. Saudi Arabia thus follows the "relativity rule" with respect to contractual obligations. One neither profits from nor is obligated by contracts to which he is not a party. As a result, this cause of action does not lie against Aramco. "Contractual rights belong to the contracting party only...." (Nazer Aff., ¶ 30).

clude the granting of a summary judgment motion. *Merican, Inc. v. Caterpillar Tractor Co.,* 596 F.Supp. 697, 700 (E.D.Pa. 1984); *Alosio v. Iranian Shipping Lines, S.A.,* 426 F.Supp. 687, 689 (S.D.N.Y.1976), *aff'd.,* 573 F.2d 1287 (2d Cir.1977).

## II. THE ACTION IS DISMISSED FOR FAILURE TO JOIN INDISPENSABLE PARTIES

■ Federal Rules of Civil Procedure 19 directs a court to dismiss an action for failure to join indispensable parties. The rule requires a two part test. First, the court must determine if a party should be joined if feasible. If so, the court must then ascertain whether in equity and good conscience an action should be dismissed if such party cannot be joined. Plaintiff failed to name in his complaint two essential parties to this action: Lummus, plaintiff's employer, and NMS, the operator of the clinic that treated plaintiff. Although plaintiff named Dr. Ali as a defendant, he has not been able to serve him because of Dr. Ali's lack of contact with the jurisdiction. Dismissal is required because the parties should be joined, they cannot be joined, and equity and good conscience favors dismissal in view of an adequate alternative Saudi Arabian forum.

### A. Rule 19(a).

Under Rule 19(a), a party should be joined if three requirements are met. First, complete relief cannot be accorded among those already parties without the absent party. Second, the absent party claims an interest in the action, and his absence may impede his ability to protect his interest. And third, the absence of the interested party may subject the persons already parties to the risk of incurring multiple and inconsistent judgments.[4]

Under the first prong of the Rule 19(a) test, this action must be dismissed because

Lummus, NMS and Dr. Ali are all absent and plaintiff cannot obtain a judgment against them; these parties should all be joined. In *Japan Petroleum Co. (Nigeria), Ltd. v. Ashland Oil, Inc.,* 456 F.Supp. 831 (D.Del.1978), this Court held that in a contract action, the subsidiary Nigerian subsidiary of two defendants had to be joined because it was the subsidiary alone that signed the contract with the plaintiff. 456 F.Supp. at 836. In the present case, it was Lummus alone that signed a contract with plaintiff. Moreover, Dr. Ali and NMS all stand in direct contractual or personal liability relationship to the plaintiff and they must be joined. *See also Whyham v. Piper Aircraft corp.,* 96 F.R.D. 557 (M.D. Pa.1982) ("[t]he goal of Rule 19(1) is to protect the interests of the parties by affording complete adjudication of the dispute. Judicial economy is aided by avoiding repeated lawsuits concerning the same subject matter."). *Id.*

Under the second prong of Rule 19, the interests of the absent parties to this action may well be impaired in their absence. Even if Aramco were found not liable in this lawsuit, the ability of NMS and Dr. Ali to perform adequate medical treatment would be challenged. This could be viewed as a prior finding of malpractice in later suits, thereby impairing their professional reputations. The impairment of their interests requires that they be joined under Rule 19(a)(2)(i).

Finally, Lummus, NMS and Dr. Ali should be joined under Rule 19(a)(2)(ii) because in their absence Aramco may be subject to multiple or inconsistent obligations from this suit. Under the Aramco-Lummus and Aramco–NMS contracts, Aramco enjoys a right of indemnification. (Drucker Aff., Defendant's Ex. B, Schedule A, ¶ 10.3.1; *Id.;* Defendant's Ex. A, Schedule A, ¶ 8.1). Indemnification actions would have to be brought in Saudi Arabia since

---

4. Under Rule 19(a), a party should be joined if: (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reasons of his claims interest.
Fed.R.Civ.P. 19(a).

neither Lummus nor NMS is subject to service of process here. Successive suits would become unnecessary if this action were tried in a jurisdiction where all the parties could be joined. *See Whyman,* 96 F.R.D. at 559. Such actions, moreover, could present the possibility of having different factual conclusions reached as to liability and damages by fact finders in Delaware and Saudi Arabia.

Lummus, NMS and Dr. Ali satisfy the three prong test and should be joined, if feasible, under Rule 19(a).

### B. *Rule 19(b).*

Having met the Rule 19(a) criteria, the Court must now decide whether in equity and good conscience, this action should be dismissed because the absent parties are indispensable to the action.

In determining whether dismissal is proper, Rule 19(b) directs the Court to consider a number of factors, the most important being whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.[5] *See Provident Tradesmen's Bank & Trust Co. v. Patterson,* 390 U.S. 102, 109, 88 S.Ct. 733, 737, 19 L.Ed.2d 936 (1968). In the case at bar, Saudi Arabia presents a satisfactory alternative forum. Saudi Arabia has a strong interest in resolving claims within its borders, plaintiff's cause of action as to the absent parties is recognized under Saudi law, and the claim is not subject to a defense based on the running of an applicable statute of limitations. (Nazer Aff., ¶¶ 16, 20, 22, 23). *See Budd Co. v. United States Dept. of Transp.,* 89 F.R.D. 555, 559 (E.D.Pa.1981) (action dismissed after determining that plaintiff would not be faced with a statute of limitations problem).

Saudi Arabia is recognized as an adequate forum. *Shields v. Mi Ryung Construction Co.,* 508 F.Supp. 891 (S.D.N.Y. 1981). That country possesses a "sophisicated legal system capable of enforcing a

judgment if one is obtained." *Id.* at 894 (holding that the expenses of flying to Saudi Arabia from Arizona were not significant given that the action was in New York).

A second important factor in considering dismissal under Rule 19(b) is whether a judgment rendered in a person's absence will be adequate. Without NMS, Lummus, and Dr. Ali, no adequate judgment can be rendered in this case. This would frustrate the "interests of the courts and the public in complete, consistent and efficient settlement of controversies." 390 U.S. at 102, 88 S.Ct. at 733. When one proceeding will solve an entire controversy, this 19(b) factor is given substantial weight. *Evergreen Park Nursing and Convalescent Home, Inc. v. American Equitable Assurance Co.,* 417 F.2d 1113, 1116 (7th Cir. 1969); *Whyham,* 96 F.R.D. at 562; *Gottlieb v. Vaicek,* 69 F.R.D. 672, 680 (N.D.Ill. 1975); *Japan Petroleum Co.* at 847.

The Court also finds that the remaining 19(b) factors militate in favor of dismissal. A judgment rendered in the absence of the Saudi parties would be prejudicial to the professional reputations of the Saudis. 96 F.R.D. at 563. There is no way for this Court to structure relief so that the prejudice caused by the absence of the necessary parties—Lummus, NMS, Dr. Ali and Aramco—can be avoided. *See Glenny v. American Metal Climax, Inc.,* 494 F.2d 651, 654 (10th Cir.1974).

Defendants' motion to dismiss is granted.

An Order will enter in conformity with this Opinion.

---

**5.** The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.