Lynn S. JAMES Plaintiff,

v.

VALVOLINE, INC., Ashland Inc., the Valvoline Company, A Division of Ashland Inc. Defendants.

No. G–01–032.

United States District Court,
S.D. Texas,
Galveston Division.

Aug. 8, 2001.

Kenneth Ross Citti, Citti & Associates, Houston, TX, Mediator.

Michael W. Cramer, Attorney at Law, Hoston, TX, for Pacific Employers Ins. Co.

John W. Stevenson, Jr., Stevenson & Ammons, Hoston, TX, for Lynn S. James.

James D. Thompson, III, Vinson & Elkins, Hoston, TX, for Defendants.

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS OR, ALTERNATIVELY, TO TRANSFER

KENT, District Judge.

Plaintiff brings this personal injury lawsuit under state law. Now before the Court is Defendant Ashland Inc.'s [1] ("Ashland") Motion to Dismiss or, Alternatively, to Transfer. For the reasons stated below, Defendant's Motion is **DENIED**.

### I. FACTUAL SUMMARY

Plaintiff Lynn James ("James") has resided in Baytown, Texas since 1968.[2] For nearly all of this same thirty-plus year period Plaintiff has worked for Lubrizol Corporation ("Lubrizol") in Deer Park, Texas. On June 20, 2000, Plaintiff James was working for Lubrizol, a non-party, as part of a group of workers installing a Viscosity Modifier Blending System at an Ashland facility in Cincinnati, Ohio. Lubrizol was, according to Ashland, "overseeing" the installation of this equipment.

While at work, Plaintiff fell from a ladder into an open containment pit and sustained severe injuries. As a result, Plaintiff is now paralyzed in all four extremities. Thereafter, on January 19, 2001, Plaintiff filed suit in this Court against Ashland, claiming that Ashland's negligence was the cause of his injuries.

However, several other entities were also involved in this installation project. Ashland states that Michael Lichtenberg & Sons Construction, Inc. ("Lichtenberg") was the general contractor in charge of the work area. Further, according to Ash-

---

**1.** Although Plaintiff has named three separate Defendants, Defendant Ashland Inc. maintains that the other two named Defendants have no separate legal existence apart from Ashland Inc. Accordingly, the Court's refer-

ence to Defendant Ashland, Inc. subsumes all named Defendants.

**2.** Baytown is in Chambers County, Texas-part of this Court's four-county Division.

land, a subcontractor, Complete Mechanical, allegedly may have supplied the ladder from which Plaintiff fell. Plaintiff did not sue Lichtenberg (the general contractor), Complete Mechanical (the subcontractor), or Lubrizol (his employer), instead opting to sue only Ashland in this Court.

Ashland is not a Texas citizen. It is, rather, a Kentucky corporation with its principal place of business in Kentucky. Ashland now argues that: (1) this Court lacks personal jurisdiction over it, (2) Plaintiff has failed to join necessary and indispensable parties under Federal Rule of Civil Procedure 19, and, in the alternative, (3) the Court should exercise its discretion under 28 U.S.C. § 1404(a) to transfer this action to Ohio.

## II. ANALYSIS

### A. *Motion to Dismiss for Lack of Personal Jurisdiction*

■ Ashland seeks dismissal pursuant to Fed.R.Civ.P. 12(b)(2), contending that this Court lacks personal jurisdiction over it. In federal court, personal jurisdiction over a nonresident defendant is proper when: (1) the defendant is amenable to service of process under the forum state's long-arm statute, and (2) the exercise of personal jurisdiction over the defendant is consistent with due process. *See Stripling v. Jordan Prod. Co., L.L.C.,* 234 F.3d 863, 869 (5th Cir.2000); *Jones v. Petty–Ray Geophysical Geosource, Inc.,* 954 F.2d 1061, 1067 (5th Cir.1992). The Texas long-arm statute authorizes service of process on a nonresident defendant if the defendant is determined to be "doing business" in Texas. *See* Tex. Civ. Prac. & Rem.Code Ann. § 17.042. Because the phrase "doing business" has been interpreted to reach as far as the United States Constitution permits, the jurisdictional analysis under the Texas long-arm statute collapses into a single due process inquiry. *See Ruston*

*Gas Turbines, Inc. v. Donaldson Co. .,* 9 F.3d 415, 418 (5th Cir.1993); *Schlobohm v. Schapiro,* 784 S.W.2d 355, 356–57 (Tex. 1990).

■ Whether the exercise of personal jurisdiction over a defendant is consistent with the Due Process Clause of the United States Constitution likewise requires a two-pronged inquiry. First, the Court must conclude that the defendant has "minimum contacts" with Texas. *See International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Second, the Court must ensure that requiring the defendant to litigate in Texas does not offend "traditional notions of fair play and substantial justice." *Id.; see also Wilson v. Belin,* 20 F.3d 644, 647 (5th Cir.1994); *Ruston,* 9 F.3d at 418.

■ The "minimum contacts" aspect of due process can be satisfied by either finding general jurisdiction or specific jurisdiction. *See Wilson,* 20 F.3d at 647. For general jurisdiction, the defendant's contacts with the forum state must be both "continuous and systematic" and "substantial." *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 417, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404 (1984); *Villar v. Crowley Maritime Corp.,* 990 F.2d 1489, 1496 (5th Cir.1993). Unlike with specific jurisdiction, a nonresident defendant's contacts need not be related to the plaintiff's cause of action for general jurisdiction to be established. *See Alpine View Co. Ltd. v. Atlas Copco AB,* 205 F.3d 208, 215 (5th Cir.2000).

■ Generally, with regard to a Motion to Dismiss for Lack of Personal Jurisdiction, once a nonresident defendant raises the issue of personal jurisdiction by motion, the plaintiff must bear the burden of establishing the Court's jurisdiction over the nonresident. *See Wilson,* 20 F.3d at 648. However, a plaintiff may bear her

burden by presenting a prima facie case in situations, like this, in which the Court does not hold an evidentiary hearing. *See id.; Asarco Inc. v. Glenara, Ltd.,* 912 F.2d 784, 785 (5th Cir.1990). Moreover, in evaluating whether a plaintiff has presented a prima facie case of jurisdiction "uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties affidavits must be resolved in the plaintiff's favor." *D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.,* 754 F.2d 542, 545 (5th Cir.1985); *accord Stripling,* 234 F.3d at 869.

### 1. Minimum Contacts

Ashland concedes that it has sufficient minimum contacts with Texas for general personal jurisdiction to attach.[3] Accordingly, the Court finds that Ashland has purposely availed itself of the privilege of conducting business activities in Texas, thereby meeting the requirements for general jurisdiction under the first prong of *International Shoe* and its progeny.

### 2. Fair Play and Substantial Justice

Although conceding that its contacts with Texas are continuous and systematic and substantial, Ashland contends that "exercising personal jurisdiction in this case in Texas shatters the notions of fair play and substantial justice." The Court thus undertakes the second part of its Due Process inquiry. *See International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158.

To satisfy the Constitution, there must exist a sufficient relationship between the defendant and the forum state that it would be "reasonable ... to require the corporation to defend the particular suit which is brought there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980). In evaluating this reasonableness issue, the Court considers (1) the defendant's burden, (2) the interests of the forum state, (3) the judicial system's interest in efficient resolution, (4) the plaintiff's interests in obtaining relief, and (5) the shared interest of the several states in furthering "fundamental substantive social policies." *Asahi Metal Indus. Co., Ltd. v. Superior Court,* 480 U.S. 102, 113, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987); *see also Guidry v. United States Tobacco Co., Inc.,* 188 F.3d 619, 630 (5th Cir.1999); *Bearry v. Beech Aircraft Corp.,* 818 F.2d 370, 377 (5th Cir.1987). However, once minimum contacts have been established, "it is incumbent on the defendant to present a compelling case that the presence of some consideration would render jurisdiction unreasonable." *Jones,* 954 F.2d at 1068; *accord Guidry,* 188 F.3d at 630. The assertion of jurisdiction will "rarely" be unfair after minimum contacts have been shown. *See Wien Air Alaska, Inc. v. Brandt,* 195 F.3d 208, 215 (5th Cir.1999).

In this case, Texas clearly has an interest in adjudicating a dispute involving one of its own residents and a Kentucky corporation, which has a large business presence within this state. *Cf. Ruston,* 9 F.3d at 421 (holding that Texas has an interest in adjudicating a dispute involving one of its residents). And while it may be a burden on Defendant to litigate the action in Texas, it would likewise be an even greater burden on a severely injured Plaintiff to prosecute the action in Ohio, or in any court far from his home and local medical treatment personnel. The overall

---

**3.** Ashland's minimum contacts include its operation of five manufacturing plants in Texas, which employ 600 people; although this does represent just 2% of its total workforce. Further, Ashland has generated more than $500 million in revenue in Texas, representing 8.8% of its worldwide revenue. Ashland also owns or leases real property in Texas.

burdens involved in litigating in Ohio, or elsewhere, as compared with Texas indicate that personal jurisdiction is fair and reasonable in this case. *See Wien Air*, 195 F.3d at 216 (discounting a defendant's burden when forcing the plaintiff to litigate elsewhere would merely shift the burden to the plaintiff).

Further, as the Plaintiff in this case is a tetraplegic, his ability to pursue a lawsuit outside this forum, where he resides and is receiving medical treatment, is severely diminished. Thus, Texas, and the Galveston Division in particular, are crucial to Plaintiff's ability to obtain "convenient and effective relief." Indeed, it is not difficult to hypothesize a scenario in which this Plaintiff, or one similarly situated, would become resigned to forgo a lawsuit rather than attempt the rigors of cross-country travel to a distant forum. By contrast, Ashland is a massive corporation with the resources to defend itself with little or no difference in cost in virtually any forum.[4]

Despite the positions of the parties, Ashland essentially argues that it cannot fairly be subjected by to a lawsuit here having no connection to its contacts with Texas. According to Ashland, finding general jurisdiction means that "Ashland could be sued in Texas by anyone on any claim-regardless of where in the world the claim arose, regardless of where in the world the injury took place, and even if the State of Texas has absolutely no interest in this dispute." In offering its doomsday predic-

tion, Ashland misses the point of this portion of the Court's jurisdictional analysis: that being the Court's consideration of the facts of a given case in light of various interests in order to ensure "fair play" and "substantial justice." Thus, Ashland's assertion is not necessarily true.

Contrary to Ashland's suggestion, it is not as though a hypothetical resident of Ohio, injured in the same manner, traipsed down to Galveston instead of pursuing a remedy in his local courts, which would clearly have personal jurisdiction. As discussed, however, this case involves an injured Texas resident, who worked in Ashland's industry, complaining of injuries suffered while performing work for the benefit of Ashland. Although the result could differ in the hypothetical situation posited by the Court, the assertion of jurisdiction in *this* case is manifestly fair and just.[5] *See Guidry*, 188 F.3d at 630 ("The relationship between the defendant and the forum must be such that it is reasonable to require the defendant to defend the particular suit which is brought there.").

After careful consideration of the totality of circumstances, the Court concludes that general personal jurisdiction exists over Ashland, and that the exercise of jurisdiction is consistent with Constitutional requirements. Accordingly, Ashland's Motion to Dismiss for Lack of Personal Jurisdiction is hereby **DENIED**.

---

4. As discussed below, Ashland maintains that this controversy could be most effectively resolved in Ohio where other parties potentially liable to Plaintiff or Ashland could be joined. This argument does support a conclusion that this the judicial system's interest in efficiency might be better served by forcing Plaintiff to litigate in Ohio. While important, this interest cannot overcome the unique needs of this Plaintiff and the interests of the State of Texas. As the Fifth Circuit has stated, "once minimum contacts are established, the inter-

ests of the forum and the plaintiff justify even large burdens on the defendant." *Wien Air*, 195 F.3d at 215.

5. Even more "unfair" scenarios can be easily envisioned. An Ohio resident Plaintiff could sue Ashland in Texas for a defective quart of Valvoline motor oil that had been manufactured, sold and utilized in Ohio. Such could well be unfair or unjust.

**B.** *Motion to Dismiss for Failure to Join Necessary and Indispensable Parties*

Ashland has also moved for dismissal based upon Plaintiff's failure to join necessary and indispensable parties. In order for Ashland to prevail on this issue, it must show that there is at least one party: (1) who should be joined if feasible (a necessary party), (2) whose joinder is not feasible, and (3) in whose absence the action cannot proceed in equity and good conscience (an indispensable party). Fed. R.Civ.P. 19(a) provides the factors for determining who is a necessary party:

A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations
. . .

▆ The burden is on the movant to show that an absent party is necessary, cannot be joined and is, finally, indispensable such that the action should be dismissed. *See Nottingham v. General Am. Communications Corp.*, 811 F.2d 873, 880 (5th Cir.1987) (rejecting defendant's argument to dismiss because the defendant failed to establish the necessary grounds). Whether a party is necessary and indispensable under Rule 19 is governed by

federal law in diversity cases such as this. *See Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 125 n. 22, 88 S.Ct. 733, 746, 19 L.Ed.2d 936 (1968); *Lone Star Indus., Inc. v. Redwine*, 757 F.2d 1544, 1548 (5th Cir.1985). However, "state-law questions may arise in determining what interest the outsider actually has." *Provident*, 390 U.S. at 125 n. 22, 88 S.Ct. at 746.

### 1. *Necessary Party Analysis*

The first step in determining whether a case should be dismissed for failure to join an indispensable party is to determine if any of the parties proposed to be joined are in fact necessary parties. Rule 19(a) sets forth three scenarios under which a non-party may be necessary: (1) the inability to accord complete relief among those already parties,[6] (2) the absent party claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may as a practical matter impair or impede the person's ability to protect that interest,[7] or (3) the absent party claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations.[8]

▆ Ashland argues that proceeding in the absence of Lubrizol (Plaintiff's employer), Lichtenberg (the general contractor), and/or Complete Mechanical (the subcontractor) will implicate all three of Rule 19(a)'s concerns. The Court disagrees.

First, Ashland contends that under Ohio law neither James nor Ashland will "com-

---

**6.** *See* Fed.R.Civ.P. 19(a)(1).

**7.** *See* Fed.R.Civ.P. 19(a)(2)(i).

**8.** *See* Fed.R.Civ.P. 19(a)(2)(ii).

pletely recover" unless the non-parties are joined. This argument is incorrect. Under this portion of Rule 19, only if "complete relief cannot be accorded among those already parties" will the non-party be necessary. Indisputably, in this suit for money damages, whatever amount, if any, that is awarded will be complete as between Plaintiff and Ashland. *See Temple v. Synthes Corp., Ltd.,* 498 U.S. 5, 7, 111 S.Ct. 315, 316, 112 L.Ed.2d 263 (1990); *Nottingham,* 811 F.2d at 880–81; *Bedel v. Thompson,* 103 F.R.D. 78, 80 (S.D.Ohio 1984). This is so because under Ohio law, Ashland is potentially jointly and severally liable to the Plaintiff. *See Bowling v. Heil Co.,* 31 Ohio St.3d 277, 511 N.E.2d 373, 380–81 (1987) (holding that Ohio's statutory scheme of contribution between tortfeasors did not abolish common law joint and several liability).

Ashland, however, argues that Ohio statutes have modified the common law rule of joint and several liability with respect to "noneconomic" losses suffered by a Plaintiff. Thus, reasons Ashland, the usual rule—that tortfeasors with joint and several liability are not necessary parties— should not apply. Specifically, Ohio law establishes that for the portion of a judgment that represents noneconomic loss, "each party against whom the judgment is entered is liable to the complainant only for the proportionate share of that party." Ohio Rev.Code § 2315.19(D)(1)(b). By contrast, "each party against whom judgment is entered is jointly and several liable to the complainant for the entire amount of economic loss." *Id.* § 2315.19(D)(1)(c).

Contrary to Ashland's position, however, this scheme does not change a Plaintiff's right to sue co-tortfeasors jointly or severally. *Cf. Bowling,* 511 N.E.2d at 380–81.

Instead, by the plain terms of the statute, this modification applies only to those parties to a lawsuit against whom a judgment is actually entered. Ashland's potential liability for all of Plaintiff's damages is unaffected. *See Nottingham,* 811 F.2d at 880–81 ("[W]hether [the non-party] be a joint tortfeasor, agent, or contributor to the award, the [non-party] was not an indispensable party to this case."). Thus, Ashland's distinction is one without a difference. Complete relief can be accorded amongst Plaintiff and Ashland.[9]

Next, Ashland argues that Rule 19(a)(2)(i) is implicated because of the absent parties' interest in protecting their indemnity obligations *vis-a-vis* Ashland. Ashland argues, without citing any authority, that these parties have an interest in ensuring that any judgment or settlement of this case is for as small an amount of money as possible. Again, Ashland is in error. The Fifth Circuit has plainly stated that "Rule 19 does not require the joinder of joint tortfeasors ... [or] persons against whom [a defendant has] a claim for contribution." *See Nottingham,* 811 F.2d at 880–81. The interests asserted by Ashland, while legitimate, are not the type that Rule 19 protects.

Finally, Ashland contends that the possibility of inconsistent obligations arising from their indemnity obligations makes the non-parties necessary under Rule 19(a)(2)(ii). This argument also fails. This portion of Rule 19 is simply not concerned with non-parties. Rather, it focuses upon subjecting a present party, here Ashland or Plaintiff, to inconsistent obligations because a party is missing. However, because Ashland and the non-parties who could also be liable to Ashland or the

---

**9.** If Ashland is found liable to the Plaintiff, it may, of course, have a claim for contribution

or indemnity versus other entities.

Plaintiff are "potential joint tortfeasors" they need not be joined in a single lawsuit. *Temple,* 498 U.S. at 7, 111 S.Ct. at 316. Indeed, a defendant who may be entitled to contribution or indemnity " 'cannot be subjected to double or multiple obligations since his liability is several for the entire amount.' " *See Pasco Int'l (London) Ltd. v. Stenograph Corp.,* 637 F.2d 496, 503 (7th Cir.1980) (quoting 3A Moore's Federal Practice ¶ 19.07–1(2.–2) at n. 45 (2d ed.1979)). The mere fact that Ashland could be faced with a "logically inconsistent" verdict denying recovery in a later suit for contribution or indemnity does not change this result.[10] *Id.; see also Bedel,* 103 F.R.D. at 81 ("Rule 19 does not speak of inconsistent 'results.' ").

Because the Court concludes that Lubrizol, Lichtenberg and Complete Mechanical are not necessary parties under Rule 19(a), it does not consider whether their joinder is feasible or whether they are indispensable parties under Rule 19(b).[11] Ashland's Motion to Dismiss for Failure to Join Necessary and Indispensable Parties is **DENIED.**

### C. *Motion for Discretionary Venue Transfer*

■ Ashland also seeks to have the Court transfer this action to Ohio based on 28 U.S.C. § 1404(a). Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Under this statute, the party seeking the transfer of venue bears the burden of demonstrating that the Court should, in its sound discretion, transfer the action. *See Peteet v. Dow Chem. Co.,* 868 F.2d 1428, 1436 (5th Cir.1989) (noting that the decision to transfer a case rests exclusively within the sound discretion of the district court); *Time, Inc. v. Manning,* 366 F.2d 690, 698 (5th Cir.1966) (highlighting that the movant bears the burden of demonstrating that the action should be transferred).

---

10. Ashland relies entirely on a single case from the District of Delaware to support its argument that the potential indemnity obligations of the non-joined parties make them necessary. *See Chadwick v. Arabian Am. Oil Co.,* 656 F.Supp. 857, 862 (D.Del.1987). This case is of little value. First, it was decided before the Supreme Court's decision *Temple,* which made it clear that joint tortfeasors are merely permissive parties. *See Temple,* 498 U.S. at 7–8, 111 S.Ct. at 316. Further, the opinion stands in direct contradiction with the better reasoned approach taken by the Seventh Circuit in *Pasco Int'l,* 637 F.2d at 503, in which it held that "potential indemnitors have never been considered [necessary parties]." On the basis of *Chadwick,* Ashland also argues that the non-joined parties' commercial reputation could be harmed. This argument, although contained in Ashland's discussion of 19(a)(2)(ii) actually is aimed at 19(a)(2)(i). In any event, this type of interest is not one that Rule 19 protects. *See Pasco Int'l,* 637 F.2d at 502.

11. Rule 19 allows the joinder of "necessary" parties unless that joinder would defeat diversity jurisdiction. *See Provident,* 390 U.S. at 108, 88 S.Ct. at 737. When jurisdiction is threatened, the Court must then determine whether the potentially joined party is in fact indispensable, meaning the action cannot proceed without such party. *See id.* The rule lists four factors to consider when deciding whether a party is indispensable: (1) prejudice to the absent party or to those involved in the lawsuit; (2) whether relief can be shaped to lessen the prejudice to existing parties; (3) whether relief can be given without the absent party; and (4) whether the plaintiff has another forum in which to prosecute the action if it is dismissed. *See* Fed.R.Civ.P. 19; *see also Cornhill Ins. PLC v. Valsamis, Inc.,* 106 F.3d 80, 84 (5th Cir.1997). Of course, the Court need only make this inquiry upon being persuaded that a party is indeed "necessary" to the adjudication.

When considering whether a transfer is warranted, the Court considers the following factors: the availability and convenience of witnesses and parties; the location of counsel; the location of pertinent books and records; the cost of obtaining attendance of witnesses and other trial expenses; the place of the alleged wrong; the possibility of delay and prejudice if transfer is granted; and the plaintiff's choice of forum. *See, e.g., Henderson v. AT & T Corp. .,* 918 F.Supp. 1059, 1065 (S.D.Tex.1996); *Dupre v. Spanier Marine .Corp.,* 810 F.Supp. 823, 825 (S.D.Tex.1993); *Hogan v. Malone Lumber, Inc.,* 800 F.Supp. 1441, 1443 (E.D.Tex.1992); *United Sonics, Inc. v. Shock,* 661 F.Supp. 681, 682–83 (W.D.Tex.1986). Generally, a plaintiff's choice of forum is entitled to great deference. *See Continental Airlines, Inc. v. American Airlines, Inc.,* 805 F.Supp. 1392, 1395–96 (S.D.Tex.1992) (discussing the importance of the plaintiff's choice of forum in light of the policies underlying § 1404(a)); *United Sonics,* 661 F.Supp. at 683 (stating that the plaintiff's choice of forum is "most influential and should rarely be disturbed unless the balance is strongly in defendant's favor").

Ashland maintains that this case should be transferred to Ohio principally because: (1) key witnesses reside in Ohio; (2) important documentary evidence is located in Ohio; and (3) the events giving rise to this lawsuit occurred in Ohio.

Plaintiff argues in response that: (1) several key witnesses, including at least one eyewitness, reside in Texas; (2) neither party resides in Ohio, and Plaintiff resides in this District and Division; (3) all parties have retained counsel located in the Southern District of Texas; (4) the costs of a trial in this case would not be reduced in the aggregate, but instead shifted to the Plaintiff; (5) Ashland has not carried its burden of overcoming the traditional deference accorded a plaintiff's choice of forum; and (6) a strong possibility exists that this matter will be unduly delayed by a transfer.

### 1. *Availability and Convenience of Witnesses*

The Court has previously stated that the convenience of key witnesses is the most important factor in a motion to transfer venue. *See Continental Airlines,* 805 F.Supp. at 1396. Because this is a personal injury case, Ashland rightly focuses upon key eyewitnesses who are located in Ohio. According to Ashland, two persons witnessed Plaintiff's fall, Vince Langhirt and Sam Wall, both of whom reside in Ohio. Defendant also points to other Ohio witnesses who were present and can describe the condition of the work area. Finally, Ashland indicates that Plaintiff's initially treating medical personnel are all present in Ohio. None of these witnesses work for Ashland. *See id.* at 1397 (opining that the convenience of key witnesses who are employees of a defendant is "entitled to less weight because that party will be able to compel their testimony at trial.").

In response, Plaintiff does not attempt to downplay the obvious fact that several witnesses whose testimony might be helpful are beyond the subpoena power of this Court. Instead, Plaintiff simply points out that additional eyewitnesses and also persons with the ability to describe the job site are Texas residents who were working in Ohio out of Tyler, Texas. Plaintiff also indicates that his present treating physician, who resides in the Southern District of Texas, will provide crucial testimony about Plaintiff's condition.

It appears that wherever this case might be tried some witnesses would be inconvenienced. However, the Court reminds both parties that it "vigorously exercises its authority" under Fed.R.Evid. 403 and

611(a) "to ensure that each witness' testimony is as concise as possible and that cumulative and redundant testimony is kept to a minimum," thereby limiting the time that witnesses are absent from their jobs to an "absolute minimum." *Continental Airlines*, 805 F.Supp. at 1397; *Dupre*, 810 F.Supp. at 827. Moreover, the Court liberally construes Fed.R.Civ.P. 32 to allow depositions wherever convenient. Ashland does proffer several witnesses whose convenience might be furthered by a transfer to Ohio, but Plaintiff responds with equally weighty witnesses whose convenience would be better served in Texas. Consequently, the Court finds this factor neutral.

### 2. *Location of Parties*

When determining the relative conveniences of transfer, the Court also considers the residences of the parties in the action. Plaintiff lives in this District and Division; Defendant does not reside here. However, Ashland also does not reside in Ohio-whereas it does have a major business presence in this District. Accordingly, this factor does not favor transfer to Ohio, and indeed strongly favors retention in this Court.

### 3. *Location of Counsel*

■ Plaintiff and Defendant have both retained counsel located in the Southern District of Texas. Although this factor is not of primary importance, the Court does "give some weight to location of counsel if the plaintiff chooses local counsel to bring the suit." *Dupre*, 810 F.Supp. at 826. Therefore, although the Court places little emphasis on this factor, it does favor retention here, if only slightly.

### 4. *Location of Books and Records*

Ashland concedes that the location of books and records is a factor of lesser importance in personal injury cases. The Court agrees. *See Dupre*, 810 F.Supp. at 826–27. (noting that a personal injury action is typically not the type of action in which books and records are extremely necessary); *Continental Airlines*, 805 F.Supp. at 1397 (observing that in a personal injury case "it is unlikely that all . . . relevant documents will be needed for trial, and . . . documents can be produced and examined anywhere for discovery purposes."). Nonetheless, Ashland goes on to argue that various documents exist in Ohio, and thus favor transfer. Some documents, undoubtedly, are located in Ohio, but, should these records become relevant, the Court finds absolutely no inconvenience inherent in bringing, if necessary, those records to Galveston.

### 5. *Cost of Trial*

Trial of a lawsuit is an expensive exercise. It is rare that the forum in which a case is litigated is the most convenient or the least costly for all parties involved. Here, an injured local resident has filed suit against a large company in his United States District Court. It is clear that a transfer of this case to Ohio would weigh heavily on this Plaintiff, while Ashland would likely gain little, if any, benefit. The Court, therefore, concludes that this factor does not support transfer.

### 6. *Location of the Alleged Wrong*

Ashland presses that the incident occurred in Ohio. This factor favors transfer. However, the Court notes that although the place of the alleged wrong is an important factor to consider when deciding whether to transfer venue, it is not the sole factor. *See Dupre*, 810 F.Supp. at 824. This factor often subsumes the notion that a case should be tried in a forum which has an interest in the outcome of a dispute. In this regard, Ashland argues that the citizens of Ohio have a "keen"

interest in ensuring that workplaces in their communities are safe. This is certainly true. However, the residents of this District and Division likewise have a similarly strong interest in ensuring that an area employer, Ashland, maintains its workplaces in Texas, Ohio, or elsewhere in a reasonably safe condition. Moreover, the injured Plaintiff in this case resides in this Division. Accordingly, in this case, the Court finds that this factor does not favor transfer.

### 7. *Possibility of Delay and Plaintiff's Choice of Forum*

Plaintiff's choice to litigate this case in the Galveston Division of the Southern District of Texas is entitled to great deference. *See United Sonics,* 661 F.Supp. at 683. Furthermore, "the possibility of delay or prejudice if the case is transferred will always play a large role in this Court's analysis." *Dupre,* 810 F.Supp. at 828.

In the present case, the Plaintiff was injured more than one year ago, and is presently undergoing ongoing rehabilitation in this District, making the Court especially conscious about bringing this matter to a prompt resolution. *See United Sonics,* 661 F.Supp. at 683; *Dupre,* 810 F.Supp. at 828 (espousing that a prompt trial "is not without relevance to the convenience of parties and witnesses and the interest of justice"). Delays are inherent in any transfer to any District, and Ashland has not carried its burden of persuading this Court that Plaintiff's choice of forum should be disturbed and subjected to these inevitable delays. *See Sanders v. State Street Bank & Trust Co.,* 813 F.Supp. 529, 536 (S.D.Tex.1993).

After careful consideration of all the specific facts and relevant factors in this case, the Court concludes that Ashland, despite advancing several cogent arguments, has offered no compelling reasons for transfer to the United States District Court for the District of Ohio. Thus, the Court declines to disturb the forum chosen by Plaintiff and to introduce the likelihood of delay inherent in any transfer simply to avoid the insignificant inconvenience that Ashland may suffer by litigating this matter in Galveston rather than in Ohio. Ashland's Motion for Transfer of Venue is DENIED.

### III. CONCLUSION

As set forth in detail above, the Court **ORDERS** that Defendant's Motion to Dismiss or, Alternatively, to Transfer is **DENIED.** Having **DENIED** Ashland's various Motions, the Court briefly notes that it is in no way making a determination about the merits of this action. The Court's decision to retain this case may not inure to the benefit of Plaintiff, as, for example, it could be that Ashland had no duty with respect to the place of injury. Accordingly, if after the completion of discovery, the evidence indicates that Ashland has done nothing wrong, the Court will be pleased to entertain any motion for dispositive relief Ashland might later deem appropriate. **IT IS SO ORDERED.**